671 So.2d 255 (1996)
Virginia A. SLAWSON, Appellant,
v.
FAST FOOD ENTERPRISES, a Florida general partnership;
Florida Ventures, Inc., a Florida corporation; and
Patterson-Erie Corporation, a Delaware corporation, Appellees.
Nos. 94-2793, 95-0069.
District Court of Appeal of Florida, Fourth District.
April 10, 1996.
*256 Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., and John A. Shipley of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellant.
Michele I. Nelson of Paxton, Crow, Bragg, Smith & Keyser, P.A., West Palm Beach, for appellees.
FARMER, Judge.
After a 10-hour drive from South Carolina to Florida and working for two hours on some problems with a rental tenant, Mrs. Slawson sought to ease her hunger in the only restaurant she could find still open, a Burger King. At the same time, one Charles Kidd went to the same Burger King following a session of drinking at a number of different bars. Kidd initially made sexual advances to one of the counter clerks, telling her that he would like to "have" the other clerk "on the counter" and otherwise acted "obnoxious[ly]". Although the incident was reported by the clerk to her supervisor, the manager failed to have Kidd ejected, to call the police, or even merely to continuously monitor him. Ultimately Kidd forced his way into the ladies room and attacked and raped Mrs. Slawson, who suffered permanent injuries.
She sued two people for the rape: Kidd, the rapist, for the intentional tort of assault and battery; and Burger King[1] for failing to protect a business invitee on its premises from the reasonably foreseeable intentional attack of a third party. A jury agreed with both claims and assessed economic damages of $88,000 and non-economic damages of $212,000.
The trial judge, however, had decided that the action was covered by section 768.81, Florida Statutes, and consequently asked the jury to apportion fault between Kidd and Burger King. The jury in turn found Kidd 80% and Burger King 20% responsible for her injuries. The judge later reduced Burger King's liability for non-economic damages in accordance with the jury's apportionment. On appeal, Mrs. Slawson argues that the statute is inapplicable to this action founded on an intentional tort. We agree and reverse.
Section 768.81 provides in pertinent part as follows:
"(3) Apportionment of damages.In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
"(4) Applicability.

*257 (a) This section applies to negligence cases. For purposes of this section, `negligence cases' includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories. In determining whether a case falls within the term `negligence cases,' the court shall look to the substance of the action and not the conclusory terms used by the parties.

(b) This section does not apply to any action brought by any person to recover actual economic damages resulting from pollution, to any action based upon an intentional tort, or to any cause of action as to which application of the doctrine of joint and several liability is specifically provided by chapter 403, chapter 498, chapter 517, chapter 542, or chapter 895." [e.s.]
We are here concerned with the legislature's expressed intention as to both what the statute covers and what is excluded.[2]
At the outset we return to a few appropriate principles. At common law the defense of contributory negligence was traditionally not available to an intentional wrongdoer. Deane v. Johnston, 104 So.2d 3 (Fla. 1958). After the supreme court replaced contributory negligence with comparative negligence, the court held that intentional wrongdoing could not be used for purposes of comparative fault to reduce a plaintiff's recovery. Island City Flying Service v. General Electric Credit Corp., 585 So.2d 274 (Fla.1991). The common law imposed joint and several liability only against joint tortfeasors, who were defined as parties whose negligence had combined to produce plaintiff's injury. Davidow v. Seyfarth, 58 So.2d 865 (Fla.1952).[3] Finally, under the common law, an owner of land could not escape liability for failing to prevent the foreseeable risk of harm from the intentional conduct of another on his land by simply pointing to the intentional conduct of the attacker. Holley v. Mt. Zion Terrace Apartments Inc., 382 So.2d 98 (Fla. 3rd DCA 1980).
It has long been the law of this state that statutes in derogation of the common law must be strictly construed in favor of the common law. Carlile v. Game & Fresh Water Fish Comm., 354 So.2d 362 (Fla.1977). The court explained this rule in Carlile as follows:
"[The] statute is clearly in derogation of the common law principle of sovereign immunity and must, therefore, be strictly construed:
`Statutes in derogation of the common law are to be construed strictly, however. They will not be interpreted to displace the common law further than is clearly necessary. Rather, the courts will infer that such a statute was not intended to make any alteration other than was specified and plainly pronounced. A statute, therefore, designed to change the common law rule must speak in clear, unequivocal, terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard. 30 Fla. Jur. Statute, Sec. 130.'
Inference and implication cannot be substituted for clear expression. Dudley v. Harrison, McCready & Co., 127 Fla. 687, 173 So. 820 (1937)." [e.s.]
Carlile, 354 So.2d at 364. In other words, statutes abolishing or limiting the common law must be clear as to the abrogation or change; when the extent of the abrogation or change is not clear from the text of the *258 statute, then the common law rule stands. Id.
Beginning with the text of section 768.81, we find in subsection (3) that proportionate fault is to be diminished or reduced only in those actions to which the section applies. Subsection (4)(a) specifies, however, that the statute applies solely in "negligence cases," and that "[i]n determining whether a case falls within the term `negligence cases,' the court shall look to the substance of the action and not the conclusory terms used by the parties." Subsection (4)(b) further specifies that the section does not apply "to any action based upon an intentional tort." Subsection (3) is a mechanical rule requiring that, after the court has properly applied the section to the case, the verdict on damages shall be reduced in the judgment to each defendant's proportionate degree of fault in accordance with the jury verdict.[4]
Hence looking "to the substance of the action and not the conclusory terms used by the parties," we conclude that the substance of this action was an intentional tort, not merely negligence. In limiting apportionment to negligence cases, the legislature expressly excluded actions "based upon an intentional tort." [e.s.] The drafters did not say including an intentional tort; or alleging an intentional tort; or against parties charged with an intentional tort. The words chosen, "based upon an intentional tort," imply to us the necessity to inquire whether the entire action against or involving multiple parties is founded or constructed on an intentional tort. In other words, the issue is whether an action comprehending one or more negligent torts actually has at its core an intentional tort by someone.
It is true that plaintiff's cause of action against Burger King was for the negligent failure to protect her from the foreseeable intentional assault by another business invitee. But it was foreseeable, intentional conduct that Burger King had a duty to protect her from, not negligent conduct. Thus, while the cause of action may technically have been negligence by Burger King, the kind of harm sought to be avoided was an intentional assault, the oldest intentional tort.
In this regard, Mrs. Slawson's claim against Burger King was similar to a plaintiff's claim for punitive damages against an employer vicariously liable under respondeat superior for the conduct of an employee. See Mercury Motors Express Inc. v. Smith, 393 So.2d 545 (Fla.1981). In that circumstance, punitive damages are available against the employer where there is some fault on the part of the employer, even though the employer's own conduct was not malicious and willful. 393 So.2d at 549.
The fact that the character of the employer's fault is merely negligence as regards the intentional wrongdoing of the servant does not erase the essential nature of the claim for punitive damages against the employer. So it is here, too, with regard to Burger King's negligent failure to protect Mrs. Slawson from the reasonably foreseeable intentional assault of another patron. The form of the pleading against Burger King may have been negligence, but the substance of the action was intentional wrongdoing.
Reading the statute as contended by Burger King produces a perverse and irreconcilable anomaly. On the one hand Burger King owed a duty to protect her from foreseeable intentional assaults by other patrons; but on the other hand, Burger King contends, it is entitled under section 768.81 to diminish or defeat its liability for the breach of that duty by transferring it to the very intentional actor it was charged with protecting her against.
In this regard we are much persuaded by the logic of Holley v. Mt. Zion Terrace Apartments Inc., 382 So.2d 98 (Fla. 3rd DCA 1980). In that case a decedent's estate sued her landlord for wrongful death. The complaint contended that the landlord had failed to provide security in the common areas of the apartment building. An intruder raped *259 and murdered the decedent in her apartment. The trial court granted a summary judgment in favor of the landlord on the basis that it was not liable for her death. In the reversal of that judgment the Third District held:
"We first reject, as entirely fallacious, the defendant's claim that the brutal and deliberate act of the rapist-murderer constituted an `independent intervening cause' which served to insulate it from liability. It is well-established that if the reasonable possibility of the intervention, criminal or otherwise, of a third party is the avoidable risk of harm which itself causes one to be deemed negligent, the occurrence of that very conduct cannot be a superseding cause of a subsequent misadventure. As is said in Restatement (Second) of Torts s 449 (1965):
If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby. (e.s.) Comment b to this section states:
The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity.
See also W. Prosser, Torts, supra, § 44, at 275, nn. 20-21. The application of this principle to the case at bar is obvious. Since Mt. Zion is liable, if at all, only for failing to protect its tenant from a criminal attack, it cannot escape responsibility because the attack has actually taken place. See also Schwartz v. American Home Assurance Co., 360 So.2d 383 (Fla.1978); Wining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla.1977); Cooper v. IBI Security Systems, Inc., supra [281 So.2d 524 (Fla. 3d DCA 1973)]."
382 So.2d at 101.
This rationale conduces to a similar conclusion in this case. Burger King's liability is indistinguishable from Mt. Zion's. We see little difference between avoiding the liability entirely by a summary judgment on the "intervening cause" from the very act that the landlord had a duty to protect against, and passing off the liability in whole or in part to the very person that Burger King had a duty to protect against. The clear distinction that the legislature has so carefully constructed in section 768.81(4) between intentional and negligence actions precludes us from finding an intent in this statute to erase or obliterate the common law rules barring the Burger King defendants in this action from reducing their own liability by the intentional conduct of the other defendant they were charged with shielding her from.
Nor do we find anything in Fabre v. Marin, 623 So.2d 1182 (Fla.1993), that affects our decision. The issue presented by this case was neither presented nor decided by the supreme court in Fabre. Which arguably negligent parties should be considered for purposes of apportionment of fault on the jury form in a pure negligence action is quite different from whether the statute is even applicable to the action in which it was raised. In order to facilitate supreme court review of the issue, however, we hereby certify the following question to the court:
Does section 768.81 require or permit apportionment of fault in an action by a victim of an intentional assault against the person committing the assault and another person who, reasonably foreseeing the event, fails to take steps to prevent it from occurring?
We address the second issue on appeal. Mrs. Slawson argues that it was error for the trial judge to preclude her from arguing to the jury the effects of any apportionment between the Burger King defendants and Kidd on plaintiff's damages. She also contends that the trial judge should have *260 instructed the jury not to reduce plaintiff's damages by Kidd's percentage of fault.
Even if, for the sake of argument, this were properly a case requiring apportionment of fault under section 768.81, we find prejudicial error in so limiting plaintiff's closing argument and in failing to instruct the jury that apportionment of fault does not permit any reduction by the jury in the assessment of damages. As one judge has pointed out, if a defendant seeks the benefit of section 768.81, "the jury should be told about the effect that the statute will have on its verdict, just as it is told about the effect of traditional comparative negligence." Seminole Gulf Ry. v. Fassnacht, 635 So.2d 142, 144 (Fla. 2nd DCA 1994) (Altenbernd, J., concurring and dissenting).
This obvious fairness results from the traditional rule that a lawyer is usually entitled to argue the applicable law to the jury. Williams v. State, 565 So.2d 838 (Fla. 1st DCA 1990); and Taylor v. State, 330 So.2d 91 (Fla. 1st DCA 1976). Although these are criminal cases, the principle is no less applicable to civil cases as to law the court has decided is applicable to the action and which affects the issues to be tried. Again, even if section 768.81 required apportionment in this case, the failure to permit the argument and give the instruction requires a new trial on damages.
The judgment is reversed and the cause remanded to the trial court for a new trial on damages onlyin accordance with the views expressed in this opinion.
GLICKSTEIN and WARNER, JJ., concur.
NOTES
[1] For the sake of convenience, we refer to the three appellees as "Burger King" even though they each occupy a different status as to the restaurant in suit.
[2] The parties have stipulated that the legislative history to section 768.81, both written and audio, offers no assistance in understanding the text. In any case, we find the meaning of this statute from its text.
[3] After comparative negligence, the legislature allowed joint tortfeasors to seek contribution from one another in section 768.31, Florida Statutes, but expressly excluded intentional tortfeasors from either seeking or making contribution from negligent tortfeasors. Insurance Company of North America v. Poseidon Maritime Services Inc., 561 So.2d 1360 (Fla. 3rd DCA 1990) (intentional tortfeasor not entitled to contribution from negligent tortfeasor and negligent tortfeasor not entitled to contribution from intentional tortfeasor).
[4] We reject defendants' argument that subsection (3) deals with the scope of the applicability of the statute. Reading the statutory text, we find that the scope or extent of the applicability of the statute is set out only in subsection (4). In contrast, subsection (3) merely directs how the trial judge "shall" give effect to the apportionment whenwe stressit has properly been applied in the case.