673 So.2d 940 (1996)
Rachelle M. STELLAS, et al., Appellants,
v.
ALAMO RENT-A-CAR, INC., Appellee.
No. 94-2583.
District Court of Appeal of Florida, Third District.
May 22, 1996.
Feder & Fine and Scott Feder and Scott L. Poisson, for appellants.
Walton Lantaff Schroeder & Carson and G. Bart Billbrough and Geoffrey Marks, Miami, for appellee.
*941 Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, Miami, for the Academy of Florida Trial Lawyers in support of appellants Rachelle and Frank Stellas as amicus curiae.
Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, Jacksonville, for the Florida Defense Lawyers Association as amicus curiae.
Before NESBITT, JORGENSON and GERSTEN, JJ.
NESBITT, Judge.
The Stellases rented a car from Alamo in Orlando and made arrangements to return it in Miami. During that portion of the trip returning to Miami, the Stellases' daughter, who was driving, took a wrong turn off the expressway into a high-crime area. While stopped at a traffic signal, Bernard Aaron approached the vehicle and smashed the passenger side window grappling with Mrs. Stellas before taking her purse and fleeing. The assailant was subsequently apprehended.
The Stellases make two chief claims of error in this case. First they argue that they should not have been required to show permanent injury before being able to recover for Mrs. Stellas's noneconomic damages. Second, they claim that the trial judge erred in permitting a nonparty intentional tortfeasor's name to appear on the verdict form so as to permit the jury to apportion fault with the negligent tortfeasor. For the reasons that follow we reverse in part and affirm in part the order under review.
Mrs. Stellas, joined by her husband on a derivative claim, brought an action against Alamo on a theory of negligent failure to warn. The Stellases claimed that Alamo knew or should have known of the dangers of touring in certain areas of Miami, especially where the vehicle bore an Alamo Rent-A-Car bumper sticker. When the Stellases rested their case in chief, it was immediately assailed by a motion for partial directed verdict on the issue of noneconomic damages, for failure of plaintiffs to have established, in accord with section 627.737(2), Florida Statutes (1993), that Mrs. Stellas had sustained a permanent injury.[1]
The Stellases' counsel strenuously argued that no showing of permanent injury was required because the statute in question was inapplicable, as this accident was not one "arising out of the ownership, maintenance, operation, or use" of a motor vehicle. An argument ensued as to whether, in making such determination, the trial court should follow Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla.1984) (employing the liberal nexus test in PIP cases) or Race v. Nationwide Mut. Fire Ins. Co., 542 So.2d 347 (Fla.1989) (employing a more restrictive test in the uninsured motorist context). Ultimately, the trial court opted for the test emanating from Novak, and, applying that test, concluded that a sufficient nexus existed between the motor vehicle and the Stellases' injuries so as to make the statute applicable.
We disagree with the lower court's decision to apply section 627.737 in this case. That section is part of the Florida Motor Vehicle No-Fault Law which encompasses sections 627.730-627.7405. In part "[t]he purpose of ss. 627.730-627.7405 is to provide..., with respect to motor vehicle accidents, a limitation on the right to claim damages for pain, suffering, mental anguish, and inconvenience." § 627.731, Fla.Stat. (1993). The instant case involves a direct negligence action brought by the Stellases against Alamo for failure to warn of the dangers of driving a rental car in certain portions of Dade County. It plainly does not involve a "motor vehicle accident" as we believe that term was meant to be used by the legislature when it enacted sections 627.730-627.7405.
*942 The parties' arguments as to whether the Race or Novak line of cases is applicable entirely miss the point. Those cases all arose in the context of a plaintiff attempting to collect PIP or uninsured motorist benefits. The instant case falls outside the No-Fault Law as it involves, as stated earlier, a direct action against Alamo, not in its capacity as an owner of a motor vehicle, but instead as a business which owed its customers a common law duty of care. Accordingly, it was error for the lower court to require the Stellases to cross the permanency threshold before they could recover noneconomic damages. Thus, we affirm the jury's findings with respect to liability but reverse and remand for a new trial on damages.[2]
Because we are ordering a new damages trial, we must address the issue of whether it was error to permit the jury to apportion fault between the negligent actor, Alamo, and the nonparty intentional tortfeasor, Aaron. The question presented involves an interpretation of section 768.81, Florida Statutes (1993). That section, among other things, abrogates the doctrine of joint and several liability with respect to noneconomic damages and requires courts to apportion liability for such damages in accord with each party's percentage of fault.[3] In addition to the parties' briefs, we have been favored with amicus briefs from both the Academy of Florida Trial Lawyers as well as the Florida Defense Lawyers Association. We might delve into the matter at some length were it not for Judge Ervin's dissent in Department of Corrections v. McGhee, 653 So.2d 1091, 1093 (Fla. 1st DCA 1995), approved, 666 So.2d 140 (Fla.1996).[4] We are convinced that Judge Ervin's reasoned and well-supported opinion not only analyzes but deals with the necessary aspects of the problem. See generally R. David de Armas & Edward L. White III, Apportioning Fault Between the Negligent and Intentional Tortfeasor, Fla. B.J., Oct. 1995, at 92 (noting that "Judge Ervin's position is consistent with the principle that liability equates fault, which is the backbone of § 768.81"). We adopt and embrace Judge Ervin's analysis of the present issue, McGhee, 653 So.2d at 1099, as though it were our own opinion. Based on this analysis we conclude that the trial court did not err in allowing the jury to apportion fault between the negligent and intentional tortfeasors.[5]
To Judge Ervin's dissent, we add only the following observations. Because the legislature undoubtedly had the power to enact section 768.81 it is this court's duty to give effect to the legislature's intent in enacting the statute. Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918). Where that intent is clear from the language used in the statute, the court need not look any further. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). The unmistakable intent of 768.81(3) is to limit a negligent defendant's liability to his percentage of fault. The whole fault, of which a *943 negligent defendant's acts are but a part, is broad enough to encompass an intentional tortfeasor's acts. One dictionary defines fault as follows: "With reference to persons: Culpability; the blame or responsibility of causing or permitting some untoward occurrence; the wrongdoing or negligence to which a specified evil is attributable." 4 The Oxford English Dictionary 104 (1933). The Stellas's damages are partially the fault of Alamo and partially the fault of Bernard Aaron. Alamo, as a negligent defendant, is entitled to have its liability limited to its percentage of fault.
We respectfully disagree with the Fourth District's recent opinion to the contrary in Slawson v. Fast Food Enters., 671 So.2d 255 (Fla. 4th DCA 1996). It simply fails to give effect to the previously discussed clear legislative intent to limit a negligent defendant's liability to its percentage of fault. Further, the argument that statutes, such as 768.81, which are in derogation of the common law should be strictly construed in favor of retaining the preexisting common law rule was indirectly addressed by the Supreme Court in Fabre v. Marin, 623 So.2d 1182 (Fla.1993), when the court noted that the act, of which section 768.81 is a part, "disfavors joint and several liability to such a degree that it survives only in those limited situations where it is expressly retained." This case clearly does not involve one of those "limited situations." Because the issue posed herein is one that ultimately can only be resolved by our Supreme Court, we certify the question to the Florida Supreme Court as being one of great public importance so that it can be paired for decision with Slawson v. Fast Food Enters., 671 So.2d 255 (Fla. 4th DCA 1996).
We affirm the judgment with respect to liability but reverse for a new trial on damages consistent with this opinion.
GERSTEN, J., concurs.
JORGENSON, Judge, dissenting in part and concurring in part.
I respectfully dissent as to that portion of the court's opinion which allows the jury in the negligence action to apportion fault between the negligent actor and the criminal actor. The effect of the court's opinion today is to insulate the negligent actor from liability even though all elements of negligence have been established. The opinion eviscerates the cause of action for negligent failure to protect.
Under the common law, joint responsibility for a negligent act arose only in the case of jointly liable tortfeasors; distinct and independent tortfeasors could not seek indemnity from each other. See, e.g., Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977). Joint tortfeasors have been defined as "two or more wrongdoers [who] negligently contribute to the injury of another by their several acts, which operate concurrently, so that in effect the damages suffered are rendered inseparable." Albertson's, Inc. v. Adams, 473 So.2d 231, 233 (Fla. 2d DCA 1985), rev. denied, 482 So.2d 347 (Fla.1986) (emphasis added). Therefore, if a plaintiff sued one joint tortfeasor, that defendant could seek contribution from any other joint tortfeasor; however, if a defendant was not a joint tortfeasor, he could not shift blame to a subsequent negligent or intentional tortfeasor. Id.; see also Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503, 506 (1927) (joint tort is essential to joint action for damages); Albertson's, Inc. v. Adams, 473 So.2d at 233 (no contribution among non-joint tortfeasors); Touche Ross & Co. v. Sun Bank of Riverside, 366 So.2d 465 (Fla. 3d DCA) (same), cert. denied, 378 So.2d 350 (Fla.1979); Weaver v. Worley, 134 So.2d 272, 274 (Fla. 2d DCA 1961) (joint judgment only against joint tortfeasors). Furthermore, "[t]here [was] no right of contribution in favor of any tortfeasor who has intentionally (wilfully or wantonly) caused or contributed to the injury or wrongful death." Insurance Co. of North America v. Poseidon Maritime Servs., 561 So.2d 1360, 1361 (Fla. 3d DCA 1990) (citing § 768.31(2)(c), Fla.Stat. (1987)); see also Holley v. Mt. Zion Terrace Apartments, 382 So.2d 98 (Fla. 3d DCA 1980) (brutal act of rapist/murderer did not insulate negligent landlord from liability for failure to provide adequate security).
The Florida legislature partially abrogated the common law doctrine of joint and several *944 liability in 1993 when it adopted section 768.81(3), Florida Statutes (1993):
In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
Section 768.81(4)(a) then provides that "[t]his section applies to negligence cases." "Negligence cases" are defined as
... civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories.
§ 768.81(4)(a).
The Florida Supreme Court interpreted section 768.81 to require the fact-finder to consider and apportion the fault of all entities involved in an accidenteven individuals who were not parties to the action and were immune from suit. Fabre v. Marin, 623 So.2d 1182 (Fla.1993). In Fabre the individuals among whom fault was divided were all negligent joint tortfeasors. In this case, by contrast, the defendant, Alamo Rent-A-Car, seeks to reduce its liability for negligence by shifting a portion of its fault to a criminal who committed an intentional violent assault. However, section 768.81 does not permit Alamo to evade its liability to plaintiffs by comparing its negligence with the assailant's attack. A negligent actor is assessed blame partially upon the degree to which it is foreseeable that his breach of duty will result in harm to the plaintiff. "Where a reasonable man would believe that a particular result was substantially certain to follow, he will be held in the eyes of the law as though he had intended it." Spivey v. Battaglia, 258 So.2d 815, 817 (Fla.1972). It is not always 100% foreseeable that a victim of a breach of some duty will be injured by that breach. On the other hand, a criminal wrongdoer, by the very nature of his criminal act, intends to harm his victim. It is always 100% foreseeable that the victim will be harmed by a completed crime.[6]
In Veazey v. Elmwood Plantation Assocs., Ltd., 650 So.2d 712 (La.1994) the Louisiana Supreme Court held that in an action for negligence by a tenant against a landlord, a jury could not apportion fault between that landlord who had provided substandard security at an apartment complex and a unknown rapist who had attacked the tenant. "As a general rule, we find that negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent." Veazey, 650 So.2d at 719. The court reasoned that such apportionment was analytically impossible. "[A]s Dean Prosser has explained it, intentional wrongdoing `differs from negligence not only in degree but in kind, and in the social condemnation attached to it.' Prosser and Keeton on the Law of Torts § 65, T P. 462 (5th Ed.1984)." Id. The difference between a negligent act and an intentional act such as the crime of rape or assault lies in the mental state of the actor. "This different-in-kind argument is rooted in the moral culpability involved in intentional acts, which is objectively absent from the mind of a negligent actor." B.Scott Andrews, Comment, Premises LiabilityThe Comparison of Fault Between Negligent and Intentional Actors, 55 La.L.Rev. 1149, 1152 (1995). A criminal assailant "must either desire to *945 bring about the physical results of his act or believe they are substantially certain to follow from his act. Acting with actual desire or with substantial certainty that harm will occur is much different than failing to act as a reasonably prudent person under the circumstances." Id. at 1159.
The variance in moral culpability is recognized by the criminal justice system, by which the State prosecutes and punishes those accused of crimes that carry elements of intent, or in some cases, reckless disregard for the rights of others. Tort law, however, was designed around the principles that "injuries are to be compensated, and anti-social behavior is to be discouraged." W. Page Keeton, Prosser and Keeton on the Law of Torts § 1, at 3 (5th ed.1984). "[T]he duty underlying an action in negligence or strict products liability is to avoid causing, be it by conduct or by product, an unreasonable risk of harm to others within the range of proximate cause foreseeability. These distinct worlds of culpability cannot be reconciled." Andrews, supra at 1159, (citing Michael B. Gallub, Assessing Culpability in the Law of Torts: A Call for Judicial Scrutiny in Comparing `Culpable Conduct' Under New York's CPLR 1411, 37 Syracuse L.Rev. 1079, 1112 (1987).
Judge Ervin's dissent in Department of Corrections v. McGhee, 653 So.2d 1091, 1093 (Fla. 1st DCA), approved, 666 So.2d 140 (Fla. 1996), upon which the court relies today, was based in large part on Blazovic v. Andrich, 124 N.J. 90, 590 A.2d 222 (1991). In Blazovic, the New Jersey Supreme Court held that fault could be apportioned between negligent and intentional tortfeasors. The court reasoned that "[t]he different levels of culpability inherent in each type of conduct will merely be reflected in the jury's apportionment of fault." Blazovic, 590 A.2d at 231. The Blazovic court rejected "the concept that intentional conduct is `different in kind' from both negligence or wanton and willful conduct...." Id. However, that analysis fails to consider that culpability is based in large part on the foreseeability of the resulting injury. Because the harm caused by an intentional or criminal wrongdoer is almost certain to be 100% foreseeable, it is likely that the negligent tortfeasor will be held either fault-free, or, as in this case, minimally (10%) at fault. To allow such an apportionment removes all incentive from businesses to protect their customers from criminal attacks or to warn them of known dangers, and renders that duty illusory.
Given the fact that any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor, application of comparative fault principles in the circumstances presented in this particular case would operate to reduce the incentive of the lessor to protect against the same type of situation occurring again in the future. Such a result is clearly contrary to public policy.
Veazey v. Elmwood Plantation Assocs., Ltd., 650 So.2d 712, 719 (La.1994).
The Restatement (Second) of Torts § 449 (1965) provides that
[i]f the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.
The authors of the Restatement explain that "[t]o deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity." Id. at comment (b).
Section 768.81(4)(b), Florida Statutes, recognizes the difference between intentional torts and negligence and removes intentional torts altogether from the Fabre equation of fault with liability by specifically excluding cases that are "based upon an intentional tort." § 768.81(4)(b). By its very terms, the statute simply does not apply to cases involving intentional conducteither as a vehicle for an intentional tortfeasor to reduce his liability because of the negligence of a third party, or as in this case, for a negligent tortfeasor to reduce his liability because of intentional tortious act of a third party. See Slawson v. Fast Food Enters., 671 So.2d 255 *946 (Fla. 4th DCA 1996); see also Publix Supermarkets, Inc. v. Austin, 658 So.2d 1064, 1068 (Fla. 5th DCA) (in action against commercial vendor who sold alcoholic beverage to minor immediately before traffic accident, "[t]here is no logical way for a jury to balance the wrongdoing of the willful vendor and the intoxicated tortfeasor."), rev. denied, 666 So.2d 146 (Fla.1995); Bach v. Florida R/S, Inc., 838 F.Supp. 559 (M.D.Fla.1993) (allocation of fault between negligent and intentional tortfeasors would defeat cause of action for landlord's failure to warn tenant of known danger or to provide adequate security); Flood v. Southland Corp., 416 Mass. 62, 616 N.E.2d 1068 (1993) (negligent landowner cannot apportion fault with assailant); Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc., 249 Kan. 348, 819 P.2d 587 (1991) (bus driver's intentional sexual molestation of student could not be compared to school district's negligent retention and supervision of its employee); Gould v. Taco Bell, 239 Kan. 564, 722 P.2d 511 (1986) (business had duty to protect invitees from known danger of criminal assault, and could not reduce its fault by intentional act of assailant).
The Stellases sued Alamo for its failure to provide adequate security measures to protect them from becoming the victims of violent crime. Alamo breached its duty to protect the Stellases; the criminal assault was the consequence of that breach. Because Alamo was negligent for failing to protect its customer, "it cannot escape responsibility because the attack has actually taken place." Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d at 101.
In sum, I would join the Fourth District in Slawson and hold that fault cannot be apportioned between a negligent tortfeasor and a criminal actor. I concur as to the remainder of the court's opinion.
NOTES
[1] That section provides in pertinent part:

In any action of tort brought against the owner... of a motor vehicle with respect to which security has been provided ..., a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the injury or disease consists in whole or in part of:
(b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
§ 627.737(2), Florida Statutes (1993).
[2] We reject Alamo's argument that the jury's verdict may still be allowed to stand as we believe the trial court's instructions with respect to permanent injury may have reasonably confused or misled the jury. Faulkner v. Allstate Ins. Co., 367 So.2d 214 (Fla.1979); Adkins v. Seaboard Coast Line R.R. Co., 351 So.2d 1088 (Fla. 2d DCA 1977).
[3] The critical portion of section 768.81(3) provides: "In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability."
[4] Judge Ervin concurred in part and dissented in part from the majority opinion. McGhee, 653 So.2d at 1093. Judge Ervin's dissent from the majority opinion allowed him to reach the issue involved in the instant case. Id. The majority did not address the issue as it was rendered moot by their resolution of other issues in the case. Id. Thus, the Supreme Court's approval of the majority opinion in no way expresses an opinion as to the issue here involved.
[5] "[T]he comparative fault statute, in precluding the comparing of fault in any action based upon intentional fault, expressed an intent to retain the common law rule forbidding an intentional tortfeasor from reducing his or her liability by the partial negligence of the plaintiff in an action based on intentional tort. However, such exclusion has no applicability to an action, such as that at bar, based solely on negligence, and, consequently, the fault of both the negligent and intentional tortfeasors may appropriately be apportioned as a means of fairly distributing the loss according to the percentage of fault of each party contributing to the loss." McGhee, 653 So.2d at 1101.
[6] Some commentators suggest that the varying degrees of fault are premised upon the extent to which behavior violates a social norm. See, e.g., Jake Dear & Steven E. Zipperstein, Comparative Fault and Intentional Torts: Doctrinal Barriers and Policy Considerations, 24 Santa Clara L.Rev. 1 (1984). However, a component of that analysis is the actor's degree of knowledge that his behavior was socially unjustified. "We measure the social justification of the conduct by balancing the magnitude of the risk against the social utility of the conduct." Id. at 14. An analysis of risk by necessity includes a determination of whether the actor knew, or should have known, that his behavior would have a certain result. Even these commentators, however, argue that "[s]ome types of intentional torts are by their nature so offensive to our customs and values that we should as a matter of social policy decline to apply comparative fault principles." Id. at 19.