724 So.2d 672 (1999)
Maxine BURTMAN, as Trustee, Appellant,
v.
TECHNICAL CHEMICALS AND PRODUCTS, INC., a Florida corporation, Brian Foremny, and Holland & Knight LLP, a Florida partnership, Appellees.
No. 98-0712.
District Court of Appeal of Florida, Fourth District.
January 20, 1999.
*673 Donna M. Greenspan of Edwards & Angell, Palm Beach, for appellant.
Dennis A. Nowak, and Karen Levine of Tew & Nowak, Miami, for appellees.
GROSS, J.
The main issue we address in this case is whether under section 678.401, Florida Statutes (1997), a plaintiff may seek injunctive relief in addition to damages for noncompliance with the statute. We hold that a plaintiff may pursue both avenues of relief.
This is an appeal from an order granting a motion to dismiss. We will therefore treat the factual allegations of the amended complaint as true and consider them in the light most favorable to the appellant. See, e.g., Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1030 (Fla. 4th DCA 1994).
In July 1993, appellee Technical Chemicals and Products, Inc. (TCPI) retained attorney John Faro to represent it in a patent proceeding. In August 1993, Faro established the Family Support and Permanent Alimony Irrevocable Trust for Marisa T. Faro ("Trust") to meet his alimony and child support obligations arising from a dissolved marriage. Appellant Maxine Burtman agreed to serve as the trustee of the Trust. In August 1994, Faro and TCPI agreed to modify Faro's fee arrangement so that Faro would receive a stock option to purchase 50,000 shares of TCPI at $4.00 per share after the date of TCPI's initial public offering. In March 1995, Faro transferred the stock option to the Trust and notified TCPI of the transfer. In August 1995, the TCPI stock split two for one, and the option was adjusted to reflect the split, so that it was for 100,000 shares at $2.00 per share.
In December 1995, the trustee partially exercised the option and advised TCPI of her intent to purchase 50,000 shares of stock at $2.00 per share. The trustee tendered $100,000 of the Trust's funds to TCPI and 50,000 shares of stock were issued to the Trust as recorded by Certificate No. F 1355. These shares were issued as restricted shares, which means that they may only be sold pursuant to a registration statement filed with the Security and Exchange Commission (SEC) or under an exemption from registration requirements under applicable securities laws. Consequently, the certificate issued bore the following legend:
The securities represented by this certificate have not been registered under the Securities Act of 1933, as amended and may not be sold, transferred, pledged, hypothecated or otherwise disposed of in the absence of (i) an effective registration statement for such securities under said act or (ii) an opinion of company counsel that such registration is not required.
At the trustee's request, TCPI registered 10,000 shares of stock with the SEC in May 1996, and offered the stock for sale to the public. TCPI paid the proceeds from the sale to the Trust. Certificate No. FN 2035 *674 was issued to represent the remaining 40,000 shares of TCPI stock. The certificate bore the same restrictive legend as is set forth above.
In June 1996, appellant had the opportunity to sell the Trust's remaining 40,000 shares of stock to Chase Securities, Inc. (Chase). The Trust sought TCPI's approval of the proposed private sale to Chase. TCPI's counsel, Brian Foremny and Holland & Knight LLP, advised the Trust to have its counsel prepare an opinion letter addressed to TCPI confirming the availability of an exemption from registration requirements as was required in the restrictive legend. The Trust's lawyer prepared the draft opinion letter as requested.
In July 1996, Foremny and Holland & Knight advised the Trust that TCPI had instructed them to take no action on the Trust's request to obtain the necessary approval to sell the stock. At about the same time, TCPI filed a lawsuit against Faro and the Trust alleging that Faro had committed numerous acts of malpractice and that he had fraudulently transferred the stock option to the Trust. On July 10, 1996, Foremny and Holland & Knight informed the Trust's lawyer that the shares were the subject of the lawsuit filed by TCPI against Faro and the Trust, and that "the proposed sale of shares held for less than one year raised numerous considerations, including whether it was appropriate for TCPI to permit private sales outside of Rule 144." Because the Trust could not obtain an opinion from company counsel under the terms of the restrictive legend, the Trust lost the opportunity to sell the stock in accordance with the written offer from Chase.
SEC Rule 144, 17 C.F.R. § 230.144, provides a "safe harbor" exemption, which, if applicable, allows an individual to sell unregistered securities. The Securities Act of 1933
generally makes it unlawful for any person to sell any security that is not registered unless an exemption from registration is applicable. 15 U.S.C. § 77e(a) and § 77d. Section 4(1) of the Act (§ 15 U.S.C. 77d(1)) provides an exemption for sales made by persons other than an "issuer, underwriter or dealer." Because of the Act's broad definition of the term "underwriter," Rule 144 was adopted to provide a "safe harbor" exemption in certain circumstances in which the seller might otherwise be considered to be an "underwriter." Under that Rule, a sale is exempt if it meets all the requirements of Rule 144.
Bender v. Memory Metals, Inc., 514 A.2d 1109, 1112 n. 5 (Del.Ch.1986). Pursuant to Rule 144, as amended April 29, 1997, restricted shares held for at least one year after payment may be sold into the public trading market, subject to compliance with the manner of sale, notice, and volume limitation provisions of Rule 144.
When the Rule 144 holding period was decreased on April 29, 1997, the Trust had held its 40,000 shares for more than one year, having purchased them on December 15, 1995. The Trust retained the services of the brokerage firm Alex Brown to assist it in selling the Trust's remaining shares of TCPI stock under Rule 144. Because the stock certificate bore the restrictive legend requiring an opinion of company counsel that registration was not required, TCPI's transfer agent would not record a sale of the stock and issue a new certificate to the purchaser free of the restrictive legend.
Alex Brown requested from TCPI and Foremny an opinion of company counsel that pursuant to Rule 144 no registration of the stock was necessary in connection with the Trust's proposed sale of stock. TCPI and Foremny told Alex Brown "that the shares were not saleable because they were subject to a lawsuit." As a result of the refusal to provide the opinion of counsel, the Trust has been unable to sell its TCPI stock.
In December 1997, the Trust filed a four count amended complaint against TCPI, Foremny, and Holland & Knight. Counts I and II were based on section 678.401, Florida Statutes (1997), which provides:
(1) If a certificated security in registered form is presented to the issuer with a request to register transfer or an instruction is presented to the issuer with a request to register transfer, pledge, or release, *675 the issuer shall register the transfer, pledge, or release as requested if:
(a) The security is indorsed or the instruction was originated by the appropriate person or persons (s. 678.308);
(b) Reasonable assurance is given that those indorsements or instructions are genuine and effective (s. 678.402);
(c) The issuer has no duty as to adverse claims or has discharged the duty (s. 678.403);
(d) Any applicable law relating to the collection of taxes has been complied with; and
(e) The transfer, pledge, or release is in fact rightful or is to a bona fide purchaser.
(2) If an issuer is under a duty to register a transfer, pledge, or release of a security, the issuer is also liable to the person presenting a certificated security or an instruction for registration or the person's principal for loss resulting from any unreasonable delay in registration or from failure or refusal to register the transfer, pledge, or release.
In count I of the amended complaint, the Trust sought injunctive relief compelling appellees to issue an opinion that the Trust's shares need not be registered in order to be transferred. Count II was an action for damages arising from the failure to perform duties required by the statute.
The trial court denied the defendants' motion to dismiss count II of the amended complaint. However, the court granted the motion to dismiss count I for injunctive relief. The court agreed with the defendants that a showing of irreparable harm was required to state a cause of action for injunctive relief under section 678.401; the court reasoned that there could be no showing of irreparable harm because any injury could be fully compensated by money damages.
As a preliminary matter, we note our agreement with a portion of the trial court's ruling implicit in its denial of the motion to dismiss count II. The Trust's request for an opinion of company counsel regarding the Rule 144 exception is covered by section 678.401. The duty imposed by the statute is to register a transfer of stock under certain circumstances. Under the facts as pled, recognition of the applicability of the Rule 144 exemption is a ministerial act that must occur before the securities can be transferred. See Bender, 514 A.2d at 1115; American Securities Transfer, Inc. v. Pantheon Industries, Inc., 871 F.Supp. 400, 403 (D.Col.1994). Section 678.401 should be read to include such ministerial acts.
The language of section 678.401 supports the conclusion that the statute contemplates entitlement to both injunctive relief and damages in the event of a statutory violation. Section 678.401(1) provides that the issuer "shall register" a transfer if the conditions in subsections (a) through (e) are satisfied. Any "right or obligation" declared by the Uniform Commercial Code is "enforceable by action." § 671.106(2), Fla. Stat. (1997). This statutory obligation to register a transfer is enforceable by injunction, since nothing in section 678.401 "specifies a different and limited effect." Id. Construing the statute to provide for injunctive relief is in accordance with the stated policy that remedies provided by the code "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." § 671.106(1), Fla. Stat. (1997).
Section 678.401(2) states that an issuer under a duty to register a transfer is "also liable ... for loss resulting from any unreasonable delay in registration or from failure or refusal to register the transfer, pledge, or release." (Emphasis added). The adverb "also" means that damages for loss may be recovered in addition to the injunctive relief made available by the preceding subsection. This interpretation is supported by the Official Comment to section 678.401, which provides:
By subsection (2) the person entitled to registration may not only compel it but may hold the issuer liable in damages for unreasonable delay.
§ 678.401, Fla. Stat. Ann. (1990), Official Comment. A proper reading of the statute is that the right to compel registration and the right to recover damages from the delay *676 or refusal to register are cumulative remedies. See Anderson, Uniform Commercial Code (1996) §§ 8-401:15; 8-401:17; 8-401:28-31.
Appellees argue that under Florida common law, an injunction may not issue absent a showing of irreparable harm to the party seeking the injunction. See, e.g., 3299 N. Federal Highway, Inc. v. Board of County Com'rs of Broward County, 646 So.2d 215, 220 (Fla. 4th DCA 1994). One aspect of irreparable harm is that no remedy at law would be adequate to make the plaintiff whole. Appellees then point out that any decline in the value of the Trust's stock, "even if diminished to worthlessness, is calculable in monetary terms," an economic loss that does not constitute irreparable harm. Finally, appellees cite to the rule that a statute

"designed to change [a] common law rule must speak in clear, unequivocal terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard. ... Inference and implication cannot be substituted for clear expression." ... In other words, statutes abolishing or limiting the common law must be clear as to the abrogation or change; when the extent of the abrogation or change is not clear from the text of the statute, then the common law rule stands.
Slawson v. Fast Food Enters., 671 So.2d 255, 257-58 (Fla. 4th DCA 1996) (citations omitted) (emphasis in original); see Thornber v. City of Fort Walton Beach, 568 So.2d 914, 918 (Fla.1990). Appellees conclude that since section 678.401 "does not clearly and unequivocally specify that a mandatory injunction can be obtained without meeting the usual common law requirements," the common law rule stands; dismissal of count I was therefore appropriate because the Trust has failed to demonstrate irreparable injury or that the damage remedy is legally inadequate.
The strict rule of Slawsonthat to change the common law a statute must unequivocally indicate that it is so doing has been softened in cases involving the Uniform Commercial Code, Chapters 670-680, Florida Statutes (1997). Section 671.103, Florida Statutes (1997) states the rule for reconciling code provisions with the common law:
Unless displaced by the particular provisions of this code, the principles of law and equity ... shall supplement its provisions.
The concept of "displacement" allows the Code to abrogate common law rules without requiring unequivocal, explicit reference to the common law in each statutory section that effects a modification. As the supreme court has observed, "[a]lthough general principles of law and equity are applicable to supplement the provisions of the code, they will not prevail when in conflict with code provisions." Weiner v. American Petrofina Mktg., Inc., 482 So.2d 1362, 1364 (Fla.1986). In subsection (2), Section 678.401 "displaces" the common law rule that there can be no injunction where an action for damages will lie, by allowing for damages in addition to the relief made available through subsection (1). The reading urged by appellees would nullify the word "also" in subsection (2) and amount to an impermissible rewriting of the statute through creative construction.
A recent case demonstrates the operation of section 671.103. In Corfan Banco Asuncion Paraguay v. Ocean Bank, 715 So.2d 967, 23 Fla. L. Weekly D1407 (Fla. 3d DCA June 10, 1998), the third district held that section 670.207, Florida Statutes (1995), preempts a common law negligence claim relating to a wire transfer of funds between banks. While the wording of section 670.207 can be said to "displace" the common law action, and the official commentary supports such a view, that section does not unequivocally state that it changes the common law.
Appellees cite to City Nat'l Bank of Miami v. Somerset Dev. Corp. of Am., 330 So.2d 501 (Fla. 4th DCA 1976), as a case where a showing of irreparable injury or inadequate remedy at law was required in connection with injunctive relief under section 679.507(1), Florida Statutes (1975). That case is distinguishable, primarily because it involved an appeal from a temporary injunction without notice, a type of relief not at issue in this case. Florida Rule of Civil Procedure 1.610(a)(1)(A) requires a showing *677 of "immediate and irreparable injury, loss, or damage" as a precondition to the ex parte issuance of a temporary injunction.
As to the remaining issues, we affirm the trial court's dismissal of Foremny and Holland & Knight from the lawsuit. The attorneys did not qualify as "other agents" within the meaning of section 678.406(1), Florida Statutes (1997), and the amended complaint discloses no other theory under which they might be held liable. We also affirm the dismissal of the abuse of process claim, since the amended complaint does not disclose how process was used improperly after its issue. See Della-Donna v. Nova Univ., Inc., 512 So.2d 1051, 1055-56 (Fla. 4th DCA 1987).
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
POLEN and TAYLOR, JJ., concur.