899 So.2d 361 (2005)
BURNS INTERNATIONAL SECURITY SERVICES INC. OF FLORIDA, Appellant,
v.
PHILADELPHIA INDEMNITY INSURANCE COMPANY, as subrogee of D & H Distributing Corporation, and D & H Distributing Corporation, Individually, Appellees.
No. 4D03-2840.
District Court of Appeal of Florida, Fourth District.
March 23, 2005.
Rehearing Denied May 6, 2005.
*362 Nancy A. Copperthwaite, Christine L. Welstead and Jorge A. Lopez of Akerman Senterfitt, Miami, for appellant.
Neil Rose of Neil Rose, P.A., Miami, and Jonathan G. Liss of Bernstein, Chackman, and Liss, P.A., Hollywood, for appellees.
HAZOURI, J.
Burns International Security Services, Incorporated of Florida (Burns) appeals the Final Judgment in the amount of $611,588.13 in favor of Philadelphia Indemnity Insurance Company (Philadelphia Indemnity) and $4,415.31 in favor of D & H Distributing Corporation (D & H). Philadelphia Indemnity and D & H cross-appeal the trial court's application of the comparative fault statute section 768.81, Florida Statutes (2000), and the trial court's failure to award interest from the date of the *363 theft which resulted in the loss. We affirm in part and reverse in part.
This case stems from a theft which occurred in an industrial park, Parkway Commerce Center (Parkway), where D & H leased warehouse space. Tenants of Parkway paid a common maintenance expense which included payment for provisions of security at the park. Burns was the security company which provided security for the industrial park pursuant to a contract entered into with Parkway. The service was provided for the benefit of the tenants.
On or about November 10, 2000, unknown persons broke into D & H's rented space and stole merchandise worth in excess of $700,000.00. Philadelphia Indemnity was the insurance company which provided coverage for D & H's loss. As a result of the theft, Philadelphia Indemnity paid D & H $747,177.88. D & H also suffered the loss of its $5,000.00 deductible under the policy. Philadelphia Indemnity filed a subrogation complaint against Burns based upon the theft loss suffered by its insured, D & H.
The complaint alleged that Burns owed a duty of care to the tenants of Parkway, including D & H, to provide adequate physical security, to hire appropriately trained guards to deter criminal activity, and to provide all other services reasonably expected of a security guard service. The complaint further alleged that Burns breached this duty in numerous ways, resulting in the described loss.
The crux of Burns's appeal is that trial court erred in determining that Burns could have breached an existing and enforceable duty to provide security to D & H to prevent a type of crime which had never before occurred on or near the property in question. In other words, Burns contends that no duty to secure the premises can arise until there is evidence of similar prior criminal activity. We disagree.
There was testimony presented by experts retained by Philadelphia Indemnity and experts retained by Burns that opined that Burns's security services fell below the standard of care which Burns had been contracted to perform. Burns asserts however, that Philadelphia Indemnity failed to establish the reasonable foreseeability of the theft in question because there was no evidence of any prior similar crimes.
The parties cite a number of cases involving premises liability based upon a criminal attack by a third person. These premises liability cases can be divided into three categories. First are those cases which involve a landlord, operator of land, or landowner being sued, based upon a negligence theory where the plaintiff is an individual injured as a result of a criminal attack by a third party. See Cunningham v. City of Dania, 771 So.2d 12 (Fla. 4th DCA 2000) (victim's father brought action to recover for death of victim who was killed during drive-by shooting in a park owned by defendant city); Highlands Ins. Co. v. Gilday, 398 So.2d 834 (Fla. 4th DCA 1981) (business invitee of cocktail lounge sued operator and insurer of hotel where he was attacked on premises of hotel); Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980) (parents of two students sue landowner of university where students were attacked in the parking lot of the university), overruled on other grounds by Avallone v. Bd. Of County Comm'rs of Citrus County, 493 So.2d 1002, 1005 (Fla. 1986); Ameijeiras v. Metro. Dade County, 534 So.2d 812 (Fla. 3d DCA 1988) (attempted robbery victim sued county as owner of park where crime took place); Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980) *364 (tenant's personal representative sued landlord to recover for tenant's death where tenant was raped and murdered in apartment complex).
Second are the cases brought against the operators of bars for injuries sustained during criminal attacks in or around the bar. See Hall v. Billy Jack's, Inc., 458 So.2d 760 (Fla.1984) (bar patron brought suit against bar to recover for injuries sustained when he was assaulted by another patron); Allen v. Babrab, Inc., 438 So.2d 356 (Fla.1983) (patron of club brought suit against club where she was injured by another patron in the club's parking lot); Stevens v. Jefferson, 436 So.2d 33 (Fla.1983) (widow of patron brought suit against bar owner where victim was killed in bar by a fellow patron); Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA 1991) (plaintiffs were injured during a shooting outside of a bar), disapproved of on other grounds by Angrand v. Key, 657 So.2d 1146 (Fla.1995).
A third group, which is more analogous to the one before this Court, is premises liability cases involving a criminal attack by a third party where defendants include a security provider. See Vazquez v. Lago Grande Homeowners Ass'n, 900 So.2d 587, 2004 WL 2823096 (Fla. 3d DCA Dec. 8, 2004) (estate of non-resident of condominium, who died as a result of shooting at condominium development, brought action against three defendants, including the entity which provided security); Wells Fargo Guard Servs., Inc., of Fla. v. Nash, 654 So.2d 155 (Fla. 1st DCA 1995) (victim of attack in parking garage of hospital sued entity which provided security services pursuant to a contract with the hospital), quashed by 678 So.2d 1262 (Fla.1996); Williams v. Office of Sec. & Intelligence, Inc., 509 So.2d 1282 (Fla. 3d DCA 1987) (tenant brought suit against entity providing security for apartment complex where she was raped in her apartment at the complex); Fincher Investigative Agency, Inc. v. Scott, 394 So.2d 559 (Fla. 3d DCA 1981) (bag boy at grocery store brought action against security provider where he was injured during robbery at store).
Burns spends much of its analysis discussing the duty of a property owner in these premises liability cases. However, an analysis of the security provider cases indicates that the duty that arises in such cases has a different basis than the duty of a landowner, that being the duty to guard against crime as a particular undertaking of the security provider to do just that.
The third district's opinion in Vazquez is most persuasive. In Vazquez, suit was brought by the estate of a visitor to a condominium complex and by a resident of the complex. The visitor was shot and killed while visiting the resident, who was also injured in the incident. Both the condominium association and the security company were defendants. A jury verdict was returned in favor of the plaintiffs; however, the trial court entered a judgment notwithstanding the verdict in favor of the defendants. The trial court's granting of the judgment notwithstanding the verdict was based on the fact that there was no evidence presented by the plaintiffs of prior crimes. The trial court concluded that such evidence was required in order to impose liability.
In reversing the trial court, the third district distinguished the responsibility of a landowner to exercise reasonable care to secure its tenants from criminal activity from the duty owed by a security company which has undertaken to secure the premises from criminal activity. In doing so the court stated:
In the situation in which a duty to prevent harm from criminal activity arises only as an aspect of the common *365 law duty to exercise reasonable care to keep the premises safe, prior offenses, giving rise to the foreseeability of future ones, may be deemed indispensable to recovery.
. . .
In contrast, the duty to guard against crime in this case is founded upon particular undertakings and hence obligations of the defendants to do so.
As to this well-recognized, and entirely separate, basis of liability, prior-offenses evidence is not necessary. This is simply because such a requirement is entirely superfluous to the fundamental basis of the underlying claim itself. It simply makes no sense that liability arising from what is essentially a breach of contract or voluntary undertaking would require a prior breach of the agreement to establish responsibility. Stating it a different way, since the very purpose of what the association and Centurion [the security company] agreed to do was to exercise reasonable care to prevent any criminal incident from occurring, it cannot matter that the deadly incident in question was the first one.
Vazquez, 900 So.2d 587, 592-93, 2004 WL 2823096 (Fla. 3d DCA Dec. 8, 2004) (citations omitted).
We agree with the third district in that it simply makes no sense to relieve Burns of its liability of having to fulfill its obligation under the security agreement and guard the property enclosed in Parkway simply because there had not been prior similar criminal acts as the one which gave rise to this loss. The very purpose of what Burns agreed to do was to exercise reasonable care to prevent any criminal incident from occurring and it cannot matter that the incident in question was the first one.
We now turn our attention to the cross-appeal. In its cross-appeal, Philadelphia Indemnity asserts that the trial court improperly ruled that the comparative fault statute section 768.81 applies to the action and then further compounded the error by misapplying the joint liability provisions of the statute.
On the verdict form, the jury was asked to apportion the responsibility for the loss. The completed interrogatory five reads "[s]tate the percentage of any negligence which was a legal cause of the loss or damage to Philadelphia and D & H that you charge to:

Burns 45%
D & H 13%
ADT Security Services, Inc. 10%
Parkway Commerce Center 32%
 ____
 Total must equal 100%"

ADT Security Services, Inc. and Parkway Commerce Center had previously been voluntarily dismissed by Philadelphia Indemnity and D & H. However, each was placed on the verdict form as Fabre[1] defendants.
Florida law allows Burns and defendants in similar negligence actions to apportion fault between themselves and negligent non-parties. See Fla. Stat. § 768.81 (2001); Fabre v. Marin, 623 So.2d 1182, 1185-86 (Fla.1993). The trial court properly applied this law by including D & H and dismissed defendants Parkway Commerce Center, Ltd. ("Parkway") and ADT Security Services, Inc. ("ADT"), as additional Fabre defendants, on the verdict form. The jury then determined that D & H, Parkway, and ADT each were also at fault, in part, for allowing the theft to occur.
Philadelphia Indemnity misinterprets Fabre and its progeny by suggesting that *366 the trial court should not have permitted this apportionment. In support of its claim, Philadelphia Indemnity cites three cases, all of which are inapplicable because they involve the question of apportionment between negligent parties and criminals who are deemed intentional tortfeasors. See Stellas v. Alamo Rent-A-Car, Inc., 702 So.2d 232 (Fla.1997); Merrill Crossings Assocs. v. McDonald, 705 So.2d 560 (Fla.1997); Slawson v. Fast Food Enters., 671 So.2d 255 (Fla. 4th DCA 1996).
In these cases, this Court and the Florida Supreme Court clarified that, when a negligence claim involves an intentional tort, the intentional tortfeasor should not be listed on the verdict form. In particular, the courts stressed that liability should not be apportioned between a negligent party and a criminal. See Stellas, 702 So.2d at 233-34 (holding that attacker who smashed car window and stole purse should not be listed on verdict form); Merrill Crossings, 705 So.2d at 562-63 (same for attacker who shot the plaintiff in parking lot); Slawson, 671 So.2d at 259 (same for attacker who raped the plaintiff in restaurant, even though the rapist was a named defendant).
Philadelphia Indemnity correctly notes the similarity between the instant case (which involves an alleged security lapse and resulting theft) and Merrill Crossings (which involved an alleged security lapse and resulting shooting). But Philadelphia Indemnity fails to mention some key details  namely, that in Merrill Crossings, the court permitted apportionment between the two negligent parties  Wal-Mart and Merrill Crossings, the owner of the shopping center where the store was located and where the shooting occurred  but refused to allow apportionment with the intentional tortfeasor.
Following this reasoning, the trial court correctly allowed apportionment among the allegedly negligent parties in this case  D & H, Parkway, ADT, and Burns. The trial court did not address the issue posed by Merrill Crossings  whether to allow apportionment with an intentional tortfeasor  because Burns never sought to list the thieves on the verdict form or to apportion fault with them.
Philadelphia Indemnity misunderstands Fabre and its progeny as well as Florida's comparative fault statute. Under its view, a defendant in a negligent security case would never be able to apportion liability with other negligent parties (and non-parties). This interpretation is inconsistent with Section 768.81, which the trial court properly applied in this case. Although the intentional criminal acts of unknown persons who broke into D & H's warehouse and absconded with the merchandise caused D & H's loss, the action against Burns is not based upon an intentional tort but instead is based on the negligent manner in which Burns conducted its security responsibilities. Philadelphia Indemnity cites to no case in this state which holds that Section 768.81, Florida Statutes, does not apply to cases in which the theory of recovery is negligence. In the instant case, it is the negligent tortfeasors who are being held liable and there is no attempt to apportion damages based upon the intentional criminal conduct of the perpetrator of the theft.
Having concluded that § 768.81 applies to this action, we must address Philadelphia Indemnity's assertion that the trial judge miscalculated the amount of damages under § 768.81(3)(a). Under the proper analysis of this subsection, Philadelphia Indemnity and D & H are entitled to recover 87% of $767,951.71, the total stipulated damages, where D & H was found to be 13% at fault. Therefore, Philadelphia Indemnity and D & H are entitled to recover $668,117.98. Pursuant to *367 subsection (3), joint and several liability does apply in this case allowing a recovery of all stipulated damages minus a 13% deduction for comparative negligence.
Subsection (3) of § 768.81 provides:
(3) APPORTIONMENT OF DAMAGES.In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability, except as provided in paragraphs (a), (b), and (c):
(a) Where a plaintiff is found to be at fault, the following shall apply:
...
3. For any defendant found at least 25 percent but not more than 50 percent at fault, joint and several liability shall not apply to that portion of economic damages in excess of $500,000.
...
For any defendant under ... subparagraph 3., ... the amount of economic damages calculated under joint and several liability shall be in addition to the amount of economic and noneconomic damages already apportioned to that defendant based on that defendant's percentage of fault. § 768.81(3) (emphasis added).
As stated in the statute, Burns's joint liability for economic damages (the only kind in this case) shall be in addition to the amount of economic damages already apportioned to Burns based on Burns's percentage of fault. Thus, the court must first determine the amount of damages for which Burns is liable based on its own percentage of fault. When Burns's 45% of fault is applied to the stipulated damages of $767,951.71, the result is direct (non-joint) liability of Burns for $345,578.26. When the amount of damages for Burns's direct liability ($345,578.26) is subtracted from the total amount plaintiff may recover ($668,117.98)[2], the remaining balance is $322,539.72, which represents the balance of damages for which potential joint liability applies. The statute caps a defendant's joint and several liability at $500,000 where the defendant is found to be at least 25 percent but not more than 50 percent at fault. See § 768.81(3)(a)(3). Where Burns was found to be 45 percent at fault, it falls within this section of the statute. Therefore, Burns has joint liability for the remaining balance, $322,539.72, in addition to the $345,578.26, already apportioned to Burns based on its percentage of fault. When the additional $322,539.72 balance is added to $345,578.26 for Burns's direct liability based on its own fault, the total amount of Burns's liability becomes, of course, $668,117.98plaintiffs' total recoverable damages.
This method of calculation strictly follows the statutory language and logic. First, a defendant must pay damages based on its proportion of liability. In addition, the statute allows joint liability for up to another $500,000, thus effectively capping joint liability under these facts to $500,000. In contrast, the method adopted by the trial court is contrary to the language of the statute. Effectively, the method employed by the trial judge provides a credit to Burns for its directly apportioned liability, which was applied to reduce the amount for which Burns was jointly responsible, no more than $500,000 under the statute. This application of the statute would effectively reduce joint liability *368 when a defendant was assigned greater proportion of fault or liability.
Lastly, we find no merit in Philadelphia Indemnity's second point on cross-appeal that prejudgment interest should have been calculated from the date of the theft, as opposed to the date that Philadelphia Indemnity paid D & H for its loss. There is no basis in law or fact for such a calculation. Philadelphia Indemnity did not sustain a loss until it made the payment on the theft claim and therefore, the prejudgment interest was properly calculated.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR ENTRY OF JUDGMENT CONSISTENT WITH THIS OPINION.
WARNER and POLEN, JJ., concur.
NOTES
[1] Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), overruled in part on other grounds, Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 659 So.2d 249 (Fla. 1995).
[2] This amount is arrived at by reducing the stipulated damages by D & H's 13% negligence.