## No. 19,162.

COLORADO MANAGEMENT CORPORATION *v.* THE AMERICAN
FOUNDERS LIFE INSURANCE COMPANY OF
DENVER, COLORADO.

(359 P. [2d] 665)

Decided February 14, 1961. Rehearing denied March 6, 1961.

Mr. Clarence W. Button, Miss Alice Loveland, for plaintiff in error.

Messrs. Yegge, Hall & Shulenburg, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

Plaintiff in error, a counseling and management corporation, was defendant in the trial court and will hereinafter be referred to as defendant or Colorado Management. Defendant in error, a general life insurance corporation, was plaintiff in the trial court and will hereinafter be referred to as plaintiff or American Founders.

In its amended claim American Founders alleges that on or about March 1, 1956, Thomas K. Hudson as its president signed two purported general counseling contracts with Colorado Management; that the execution of both contracts was unauthorized by the board of directors of plaintiff corporation, and that said contracts were unfair and against its best interest. It was further alleged that pursuant to one of the purported contracts

plaintiff paid defendant $32,839.34, notwithstanding both contracts were void; that in consequence Colorado Management owes American Founders $32,839.34, for which it prays judgment.

By answer Colorado Management admitted that Hudson was president of plaintiff corporation and that he signed a general counseling contract on behalf of the plaintiff with the defendant on March 1, 1956, and alleges that the execution of said contract was authorized by the board of directors of plaintiff corporation; admits the receipt of $32,839.34 under said contract, and denies all other allegations. Affirmatively, Colorado Management alleges ratification and estoppel.

By a first counterclaim defendant alleges that plaintiff and defendant on March 1, 1956, entered into a general counseling contract and that defendant has at all times performed all acts required of it by said contract, but that plaintiff breached the contract on April 14, 1958, by unlawfully terminating it; that as a result of such breach defendant has been damaged in the sum of $179,466.64. By its second counterclaim defendant alleges that there is due and owing defendant the sum of $3,718.68 for services rendered plaintiff by defendant under the contract for the period from March 1, 1958, to April 14, 1958.

By reply plaintiff denied ratification or estoppel and alleged that if either of the counseling contracts was ever valid, defendant itself had breached them justifying immediate rescission and termination by plaintiff corporation. Generally in reply to the two counterclaims, plaintiff denied all the allegations contained therein and affirmatively averred that the counseling contracts were unauthorized, unfair and even if once valid and binding had nonetheless been continuously breached and violated by defendant.

Upon trial, the minutes of a meeting of the board of directors of plaintiff corporation held on February 25, 1956, were received in evidence, which established that

on said date a proposed management contract between plaintiff and defendant was discussed and on motion duly made, seconded and unanimously carried the contract was approved and the officers of plaintiff were instructed to execute said contract. The minutes further established that at this February 25, 1956, board meeting only six of eight members of the board were in attendance. Among the six in attendance at this meeting were Thomas K. Hudson, Robert E. Holland and E. V. Holland. It is undisputed that as of February 25, 1956, Thomas K. Hudson was a member of the board of directors of both plaintiff and defendant corporations and was also president of both corporations; that Robert E. Holland was a member of the board of directors of both corporations and was also the secretary of each; that E. V. Holland was chairman of the board of directors of plaintiff and was also on the board of the defendant corporation. The by-laws of plaintiff provided that a majority of the directors in office (five) would constitute a quorum for a board meeting.

At the conclusion of defendant's evidence plaintiff moved to dismiss the two counterclaims on the ground that the counseling contracts were unauthorized and therefore void because there was not a quorum of *disinterested* directors at the board meeting of February 25, 1956; that as a matter of law defendant had failed to prove ratification and finally that there was a lack of performance on the part of the defendant "from at least March 1, 1957, up to April 14, 1958." After extended argument the trial court granted the motion and dismissed both of defendant's counterclaims. In so doing the trial court declared as a matter of law that no valid contract was ever entered into by plaintiff and defendant because of the absence of a quorum of *distinterested* members at the directors meeting of February 25, 1956, three of the six directors present being also directors of and interested in Colorado Management, and that such members could not be counted in determining the exist-

ence of a quorum. In support of this conclusion the trial court relied entirely upon *Burns v. National Co.* 23 Colo. App. 545, 180 Pac. 1037, in fact read into the record the language appearing therein at page 550.

When plaintiff thereafter proposed to call rebuttal witnesses the trial court reiterated its finding that as a matter of law there never was any valid contract between the parties and indicated that in view of such fact there was no necessity for any rebuttal testimony. Whereupon plaintiff moved for a directed verdict against Colorado Management and Hudson for $32,839.34. Again considerable argument ensued at the conclusion of which the trial court granted the motion as to Colorado Management, but denied it as to defendant Hudson.

The trial court then entered formal judgment of dismissal as to Colorado Management's counterclaims and also entered judgment for American Founders and against Colorado Management only in the amount of $32,839.34. There was a judgment of dismissal of American Founder's claim against Thomas K. Hudson. Colorado Management here seeks reversal of the action of the trial court wherein it dismissed the two counterclaims of Colorado Management and also entered judgment for American Founders against Colorado Management for $32,839.34.

American Founders contends that neither of the two management contracts was properly authorized because a quorum of *disinterested* members of the board was not present at the board meeting of February 25, 1956. That such being the case the purported contracts executed pursuant to this unlawful authorization were null and void and it is therefore entitled to recover all monies paid by it to the defendant, in the agreed amount of $32,839.34. At the same time invalidity of the contract is urged as a complete defense to both of defendant's counterclaims, based upon a breach of a non-existent contract.

Colorado Management contends that the contract was

authorized, but even if not initially authorized it was thereafter ratified and in either event is binding on both parties. Additionally, Colorado Management claims it has fully performed under the contract and accordingly plaintiff is precluded from any recovery on its claim and defendant is entitled to judgment in its favor on each of its counterclaims, and finally that the case should be remanded for the sole purpose of ascertaining defendant's damages.

█ It seems to be the rule elsewhere, as well as in Colorado, that a contract or business transaction between two corporations having all or a part of their directors or officers in common is not inherently invalid and is not void because of the relationship alone, but is voidable only. However, it is generally held that a contract between two corporations having one or more common directors or officers is jealously regarded by the law, and once such a transaction is questioned it is thereafter subjected to the closest scrutiny by the courts because of this relationship, and is voidable if found to be unfair even tho there be no taint of fraud. The rule is deemed necessary to the end that in the absence of arm's length bargaining the scales may not be unfairly tipped to one side or the other even thru mistake or inadvertence. *Hirshhorn v. Mine Safety Appliances Co.*, 203 F. (2d) 279; *Tower Hill-Connellsville Coke Co. v. Piedmont Coal Co.*, 64 F. (2d) 817; *Roberts v. Saukville Canning Co.*, 250 Wis. 112, 26 N.W. (2d) 145; *Raymond-Eldredge Co. v. Security Realty Inv. Co.*, 91 F. (2d) 168; *Solimine v. Hollander*, 128 N.J. Eq. 228, 16 A. (2d) 203; *Chelrob Inc. v. Barrett*, 293 N.Y. 442, 57 N.E. (2d) 825, and *Film Enterprises, Inc. v. Selected Pictures, Inc. et al.*, 138 Colo. 468, 335 P. (2d) 260.

█ It has also been held that a contract between two corporations having common directors or officers is voidable by nature of the relationship alone and irrespective of its fairness if the vote of a common member or members is necessary to form a quorum of the board

and to effectuate the transaction. See 33 A.L.R. (2d) 1060, at page 1068; *Keenan v. Eshleman,* 23 Del. Ch. 234, 2 A. (2d) 904; *Klopot v. Northrup,* 131 Conn. 14, 37 A. (2d) 700. In accord with this rule, this court in *Burns v. National Mining, Tunnel & Land Co.,* 23 C.A. 545, 130 Pac. 1037, at pages 550-551 of the state report, approved and adopted as its own the following language: "A director cannot, with propriety, vote in the board of directors upon a matter affecting his own private interest any more than a judge can sit in his own case; and any resolution passed at a meeting of the directors at which a director having a personal interest in the matter voted will be voidable at the instance of the corporation * * * without regard to its fairness, provided the vote of such director was necessary to the result." It follows that a director of a corporation cannot be counted in determining the existence of a quorum when the transaction under consideration is one in which the director has a personal interest adverse to that of the corporation. See *Paxton v. Heron,* 41 Colo. 147, 92 Pac. 15 and *Laybourn v. Wrape,* 72 Colo. 339, 211 Pac. 367.

 In the instant case the minutes of the February 25, 1956, meeting of the board of plaintiff corporation show that only six out of eight board members were present, and that of the six present three were also on the board of the defendant corporation and two were officers thereof. Accordingly, by simple arithmetic there was no quorum of disinterested board members present at this meeting, there being in fact three "interested" directors and three "disinterested" directors. Such being the case it follows that the resolution authorizing the execution of a management contract with defendant was ineffective and the contract (or contracts) subsequently purportedly entered into were voidable.

 Colorado Management alternatively argues that even tho the management contracts be found voidable, nevertheless they were subsequently ratified by American Founders and the latter having so ratified is

estopped from maintaining this action. Here we are concerned with a general counseling and management contract whereby defendant agreed to render certain services to the plaintiff for a ten-year term, beginning March 1, 1956, in return for which plaintiff promised to pay defendant five per cent of its gross income (according to one contract) or five per cent of its gross income *plus* reimbursement for expenses (according to another contract). This is not a situation where the court is faced with a contract fully performed by one or both of the parties thereto, hence the argument that American Founders having accepted *some* services offered by defendant, and in return therefor made *some* payments, and that such conduct in and of itself amounts to ratification and vitiates the voidable nature of the contract, is untenable.

Similarly, the contention of Colorado Management that the contract was ratified by the Board of Directors on March 5, 1956, when it approved the minutes of the February 25, 1956, meeting, or that the stockholders at their meetings in 1956 and 1957 ratified the contract when they approved all of the lawful acts of the board for the preceding year, is equally untenable when viewed in the light of the record.

The approval of minutes of a preceding meeting is nothing more than an acknowledgment that the secretary has properly recorded the acts of the board and is not a legalization of invalid acts recorded therein. See *In re Chelsea Exchange Corporation*, 18 Del. Ch. 287, 159 A. 432, and *Belle Isle Corporation v. MacBean*, 29 Del. Ch. 261, 49 A. (2d) 5. And this same line of reasoning tends to refute the contention that the corporation ratified the contracts when the stockholders in their meetings in 1956 and 1957 approved all lawful acts of the board for the preceding year. Additionally, ratification can never exist unless it is clearly shown that the party charged with ratification has full knowledge of all material facts, and thereafter knowingly accepts and

approves the contract. See *Film Enterprises, Inc. v. Selected Pictures, Inc.,* supra. Such is simply not true in the instant case. Indeed, to the argument that plaintiff ratified the management contract it might well be asked: *Which* management contract? One purported contract signed by representatives of plaintiff and defendant on March 1, 1956, called for payments by plaintiff of five per cent of gross income of plaintiff. A second management contract purportedly executed on the same day called for payment of five percent of gross income *and* reimbursement of defendant by plaintiff for all expenses. The minutes of the February 25, 1956, board meeting indicate that the only management contract discussed was one calling for payments of five per cent of the gross income of plaintiff. Nevertheless, Colorado Management insists that actually the management contract authorized and approved by the board of directors on February 25, 1956, provided for payment of five per cent of plaintiff's gross income *plus* expenses. From the record it is difficult to tell which of the two contracts was purportedly "ratified." And the issue of ratification is not of major significance in view of our holding that Colorado Management itself breached the contract from and after March 1, 1957, for the reason that it ceased to render the services required by the management contract and that such breach justified the plaintiff in terminating the contract. The action of the trial court in dismissing the first counterclaim was entirely proper.

However, although the management contract was at all times voidable, this does not mean that the plaintiff is entitled to recover back *all* monies paid by it to defendant. It is undisputed, and upon oral argument conceded by American Founders, that Colorado Management did render services to American Founders at least for the period from the date of the purported contract, March 1, 1956, to March 1, 1957. One who seeks equity must still do equity. It would be inequitable to allow

American Founders to accept the services of Colorado Management and at the same time recover all monies paid to that company. To this effect is the holding of *Burns v. National Company,* supra, relied upon by the trial court in permitting plaintiff to recover back all monies paid by it to Colorado Management. In that case the corporation received $1,000 from a director and in return therefor executed its note for the same amount in favor of its director. The vote of the director who made the personal loan and received the note in exchange was necessary to form the quorum and effectuate the transaction. It was held that the transaction was voidable under the circumstances by virtue of the relationship alone, but the Court of Appeals went on to hold that even tho voidable a dissatisfied stockholder could not cancel the note without first returning or offering to return the $1,000. So, in the instant case it is inequitable to permit the plaintiff to retain the benefits resulting from the services performed by defendant and at the same time recover back all monies paid.

To reach a proper conclusion it becomes necessary to search the record to determine for what period of time defendant did perform, or substantially perform, the services involved. The purported management contract was entered into on March 1, 1956. It is not disputed that many services were rendered plaintiff by defendant for the balance of that year. The services in the main were rendered by Roan and Holt, each an officer and representative of Colorado Management, although others from time to time also assisted. However, on January 8, 1957, Roan became general manager of American Founders at a salary to be fixed after discussion with Roan, and which was subsequently fixed, according to the minutes, at $1,500 per month. Under such circumstances it is difficult to follow the argument of Colorado Management that Roan, even though general manager of American Founders and either drawing, or being entitled to draw, salary from it, was nevertheless acting for Colo-

rado Management when after January 9, 1957, he performed work and services for American Founders. If so, then American Founders was paying twice for Roan's services. The record discloses that the type of services rendered plaintiff by Roan from and after January 8, 1957, were such as a corporation could and would reasonably expect from its general manager. In other words, the services were not unusual or extraordinary or beyond the general duties of a general manager on a salary of $1,500 per month. Hence, from and after January 8, 1957, all services rendered plaintiff by Roan are in law deemed to be services rendered by him as its general manager and Colorado Management cannot claim credit therefor. In support of this proposition see *Keenan v. Eshleman,* supra.

Holt, acting in behalf of Colorado Management, continued to perform services for plaintiff until March 1, 1957. Thereafter the record discloses that Colorado Management had no employees or representative (save one stenographer) and of necessity rendered no service of any type to plaintiff. Accordingly the defendant having rendered services called for by the purported contract from March 1956 to March 1957 and such services and the benefits resulting therefrom having been accepted and retained by the plaintiff, it would be inequitable to permit plaintiff to recover payment made by it to defendant for that period of time. Conversely, the record clearly shows defendant rendered absolutely no service to plaintiff from and after March 1, 1957. The plaintiff therefore is entitled to recover back those monies paid by it to defendant for the period of time from March 1957 to March 1958.

The record discloses that the gross income of the plaintiff from March 1956 to March 1957 was $124,978.57, five per cent of which amounts to $6,248.92, and such amount should be subtracted from the judgment of $32,839.34 entered by the trial court. The net result is

that plaintiff is entitled to judgment against Colorado Management in the amount of $26,590.42.

Having held that Colorado Management rendered *no* services to plaintiff after March 1957, it follows that the trial court was correct when it dismissed the defendant's second counterclaim, which was a claim for services rendered between March 1, 1958, and April 14, 1958.

Accordingly, the judgment of the trial court is ordered modified by reducing the amount thereof to the sum of $26,590.42, and as so modified is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.