CLANCY SYSTEMS INTERNATIONAL,
INC., Petitioner

v.

Francis R. SALAZAR, Respondent.

No. 06SC698.

Supreme Court of Colorado,
En Banc.

Feb. 19, 2008.

Rehearing Denied March 17, 2008.

Burns, Figa & Will, P.C., Dana L. Eismeir, Rachel T. Rowley, Greenwood Village, Colorado, Attorneys for Petitioner.

David Sean Carroll, Denver, Colorado, Attorney for Respondent.

Justice COATS delivered the Opinion of the Court.

Clancy Systems International sought review of the court of appeals' unpublished opinion reversing the district court's summary judgment against Salazar. The district court ruled that Salazar's common law tort claims, for losses caused by Clancy's insistence upon placing a restrictive legend on a stock certificate issued to Salazar, had been displaced by provisions of Colorado's Uniform Commercial Code. The court of appeals disagreed, holding that even if the code provides specific relief for Salazar's loss, it does not also preempt his common law claims.

Because section 4–8–401(b) of the revised statutes not only imposes liability on an issuer of securities for loss resulting from its unreasonable delay in removing a restrictive legend from a reissued certificate, but also displaces common law remedies for the same loss, the judgment of the court of appeals is reversed, and the case is remanded with directions to reinstate the district court's order of summary judgment.

## I.

Francis R. Salazar brought suit against Clancy Systems International, Inc., alleging, among other things, common law claims of trespass to chattel and intentional interference with prospective advantage.[1] In these claims, Salazar alleged that he suffered a financial loss as the result of Clancy's wrongful placement of, and untimely delay in removing, a restrictive legend on a stock certificate issued to him. Finding that Salazar's common law claims had been preempted by this jurisdiction's adoption of the Uniform Commercial Code, the district court granted Clancy's motion for summary judgment.[2]

In ruling on Clancy's motion, the district court found it undisputed that Salazar acquired six million shares of Clancy stock from Robert B. Brodbeck by way of an "Agreement and Bill of Sale," dated May 19, 1993. Brodbeck, however, did not transfer the stock certificate to Salazar, as it had been lost. In 2000, when a rise in value prompted Salazar to sell his shares, he requested Clancy's transfer agent to issue a replacement certificate, without restricting his ability to transfer the shares. Although Salazar submitted reissuance documents and posted a bond, Clancy instructed its agent to include a restrictive legend on the new certificate.[3] The certificate was reissued on March 6, 2000, with a restrictive legend prohibiting transfer for two years from that date, and that restrictive legend was not removed until June 15, after Salazar provided Clancy with additional assurances but also after the value of the stock had again fallen.

Rather than seek to amend his pleadings, Salazar appealed from the district court's grant of summary judgment, and the court of appeals reversed. The appellate court reasoned that even if the Uniform Commercial Code imposes liability on an issuer for unreasonable delay in providing an unrestricted replacement certificate to which a requesting party is entitled, it remains unclear that the legislature intended to preclude recovery on the basis of common law claims for relief as well.

Clancy petitioned this court for a writ of certiorari.

1. A third claim for relief, entitled, "Prima Facie Tort," was dismissed by the district court and is not the subject of this review.

2. An earlier summary judgment by the district court had already been reversed by the court of appeals.

3. At the time of the 1993 sale, Brodbeck was considered an "affiliate" of Clancy under federal regulations. At that time, Rule 144 of the Securities Act of 1933 required a two-year restriction on the sale of securities purchased from an affiliate, and the Agreement and Bill of Sale reflected that restriction. The current rule requires a minimum of a one-year restriction. See 17 C.F.R. § 230.144(d)(1) (2007).

## II.

■ Subject to constitutional limitations, the General Assembly is vested with the power to legislate for this jurisdiction. *See* Colo. Const. art. V, § 1; *Bd. of County Comm'rs v. County Rd. Users Ass'n*, 11 P.3d 432, 436 (Colo.2000). Although it has chosen to give the common law of England full force until repealed by legislative authority, *see* § 2–4–211, C.R.S. (2007), it may therefore selectively modify or abrogate portions of that law, at its choice. We have long made clear, however, that courts will not lightly presume a legislative intent to do so; and as a matter of statutory interpretation, changes to the common law, as it has been adopted by the General Assembly, will be recognized only when they are expressly mandated or necessarily implied by subsequent legislation. *Vaughan v. McMinn*, 945 P.2d 404, 408 (Colo.1997).

In adopting the Uniform Commercial Code, the General Assembly has expressly indicated its intent that preexisting principles of law and equity have continuing vitality and be treated as supplementing the code, *unless* they have been "displaced" by any of its particular provisions. § 4–1–103, C.R.S. (2007). While we have had little cause to construe the term "displaced" as it appears in section 4–1–103, we long ago declined to find that common law causes of action survive adoption of the code unless they have been explicitly referenced by name. *See Citizens State Bank v. Nat'l Sur. Corp.*, 199 Colo. 497, 500, 612 P.2d 70, 72 (1980) (affirming continued vitality of common law action for "moneys had and received" on alternate ground that section 4–3–419's use of the phrase "conversion or otherwise" contemplated survival of other common law actions, rather than on court of appeals' rationale that it had not been explicitly displaced by name, *see Nat'l Sur. Corp. v. Citizens State Bank*, 41 Colo.App. 580, 583, 593 P.2d 362, 364 (1978)). Other jurisdictions have also rejected such a narrow understanding of the code's doctrine of "displacement" and have more fully explained their construction in terms of the code's purposes and structure.

■ The concept of "displacement," as used in the code, has been described as allowing the code to abrogate common law rules without requiring unequivocal, explicit reference to the common law in each statutory section that effects a modification. *See Burtman v. Technical Chems. & Prods., Inc.*, 724 So.2d 672, 676 (Fl.Dist.Ct.App.1999). Rather, in furtherance of the code's goal of uniformity in commercial transactions, which would be undermined by variations in the common law among the several states, it should also be understood to intend the displacement of the common law whenever both the code and the common law would provide a means of recovery for the same loss. *See Equitable Life Assurance Soc'y of the U.S. v. Okey*, 812 F.2d 906, 908 (4th Cir.1987); *see generally* R. Hillman, *Construction of the Uniform Commercial Code: UCC Section 1– 103 and "Code" Methodology*, 18 B.C. Indus. & Comm. L.Rev. 655, 662–63 (1977).

Based on this and similar articulations of the code's intent, a number of common. law actions and doctrines have been held displaced by various provisions of the Uniform Commercial Code. *See, e.g., Metz v. Unizan Bank*, 416 F.Supp.2d 568, 581 (N.D.Ohio 2006) ("[The] UCC establish[es] the standard of care applicable to a bank's handling of a negotiable instrument, thus displacing common law negligence in this area."); *Faro v. Corporate Stock Transfer, Inc.*, 883 So.2d 896, 898 (Fla.Dist.Ct.App.2004) (UCC abrogated common law claim against transfer agent by stockholder for damages arising from wrongful refusal to transfer shares); *Burtman*, 724 So.2d at 676 (UCC displaced common law rule rejecting injunctive relief where action for damages lay); *Corfan Banco Asuncion Para. v. Ocean Bank*, 715 So.2d 967, 970–71 (Fla.Dist.Ct.App.1998) (Florida Commercial Code displaced common law negligence claims relating to wire transfers between banks, despite failing to unequivocally state as much).

Part 4 of article 8 of the code, *see* §§ 4–8– 401 to –407, C.R.S. (2007), is entitled "Registration" and treats the subject of an issuer's obligation to register a transfer of securities and to replace lost, destroyed, or wrongfully taken certificates. Section 401 both enumerates the circumstances in which an issuer is duty-bound to register a transfer and specifi-

cally imposes liability on the issuer for violating that duty. As applicable here, the statute renders an issuer who is under a duty to register a transfer liable to a person presenting a certificated security in registered form, for any loss resulting from a refusal or failure to register the transfer, or an unreasonable delay in doing so. *See* § 4–8–401(b).[4] In addition, section 405 imposes a duty on the issuer to issue a new certificate upon the claim of an owner of a certificated security that the certificate has been lost.[5]

The term "registration," with reference to the registration of securities or the registration of a transfer of securities, is not specially defined in the code as a statutory term of art, with specific requirements or formalities. It is used in the general and commonly understood sense of any official recording of the essential facts evidencing ownership, and therefore transfers, of a security. *See* 12 *Fletcher Cyclopedia Corporations* § 5492 (2004). The registration of ownership is of "vital importance," see § 4–8–307, cmt. 1, C.R.S. (2007), because under the code, an issuer may treat a registered owner as the person exclusively entitled to exercise all the rights and powers of ownership. *See* § 4–8–207, C.R.S. (2007). It is therefore only upon due presentation for registration of transfer that the issuer acquires a duty to register ownership in the name of the transferee and to cease treating the old registered owner as being entitled to the rights of ownership. § 4–8–207, cmt. 1.

■ Although an issuer also has a duty, under the described circumstances, to issue a new certificate to replace one that has been lost, that duty extends only to the owner of a certificated security. § 4–8–405(a). Under the code, therefore, unless a transfer is regis-

tered, an already registered transferor remains the person whom the issuer may treat as exclusively entitled to all rights of ownership, rather than his transferee. A request by a registered owner and his transferee to issue a new security certificate specifying the transferee as the person entitled to the security therefore implicitly includes, or in effect amounts to, a request to register the transfer. *See Bender v. Memory Metals, Inc.,* 514 A.2d 1109, 1115 (Del.Ch.1986) ("[I]t is reasonable to construe the term 'register the transfer', as used in § 8–401 of the UCC, to include ... the issuance of a new certificate."); *cf. Kenler v. Canal Nat'l Bank,* 489 F.2d 482, 486 (1st Cir.1973) (indicating that request for removal of restrictive legend would be the obvious first step in, and necessary incident to, the contemplated transfer of such stock); *Am. Secs. Transfer, Inc. v. Pantheon Indus., Inc.,* 871 F.Supp. 400, 405 (D.Colo.1994) (determining that provisions of section 4–8–401 apply to a request for reissuance of a certificate because it is a predicate for transfer of the certificate). Were it otherwise, an issuer would have no duty whatsoever to issue a new certificate in the name of a putative transferee.

■ Section 4–8–405, governing the replacement of lost certificates, contains no separate imposition of liability for failure of the issuer to comply because, unlike section 4–8–401, governing registration, none is necessary. To the extent that a loss is claimed for a refusal to issue a new certificate showing a transferee's unrestricted ownership of securities, that loss is neither conceptually nor practically distinguishable from a loss resulting from the issuer's refusal to register the transferee as the unrestricted owner. The remedy provided by the code for loss

---

**4.** Subsection 401(b) provides:

If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.

§ 4–8–401(b), C.R.S. (2007).

**5.** Subsection 405(a) provides:

(a) If an owner of a certificated security, whether in registered or bearer form, claims

that the certificate has been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificate if the owner:

(1) So requests before the issuer has notice that the certificate has been acquired by a protected purchaser;

(2) Files with the issuer a sufficient indemnity bond; and

(3) Satisfies other reasonable requirements imposed by the issuer.

§ 4–8–405(a), C.R.S. (2007).

resulting from a wrongful restriction on a person's ability to alienate a security is therefore the same, whether the loss is caused by the issuer's unreasonable failure to officially acknowledge a transferee's unrestricted ownership by book entry alone, or also by refusing to issue a new, unrestricted certificate in his name.

### III.

■ Salazar's common law claims found by the district court to have been displaced by section 8–401 of the code, although pled more generally, alleged and were explicitly premised upon Salazar's inability to sell his securities for a profit, as the result of Clancy's wrongful placement of a restrictive legend on his certificate. While common law claims of interference with a prospective business advantage and trespass to chattel may have required a greater showing of wrongful intent, this is precisely the type of loss contemplated and provided for by section 4–8–401(b). By imposing liability on the issuer in this specific context for merely acting unreasonably, the code has, if anything, reduced the owner's required showing for recovery. As the code provides the more specific means of recovery for Salazar's financial loss, and actually lightens his burden in establishing liability, there is little reason to presume the legislature intended merely to supplement, rather than displace, more general common law actions also allowing for recovery.

### IV.

Because section 4–8–401(b), C.R.S. (2007), not only imposes liability on an issuer of securities for loss resulting from its unreasonable delay in removing a restrictive legend from a reissued certificate, but also displaces common law remedies for the same loss, the judgment of the court of appeals is reversed, and the case is remanded with directions to reinstate the district court's order of summary judgment.