The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

2016 CO 31
Supreme Court Case No. 14SC586
Certiorari to the Colorado Court of Appeals
Court of Appeals Case No. 13CA420
Petitioners:
Liberty Mortgage Corporation, a Georgia corporation; BB&T Corporation, a North Carolina corporation; and Branch Banking and Trust Company, a North Carolina corporation;
v.
Respondent:
Raymond L. Fiscus, a/k/a Ray Fiscus.
Judgment Affirmed
en banc
May 16, 2016
Attorneys for Petitioner Branch Banking and Trust Company:
Dufford, Waldeck, Milburn & Krohn, LLP
Christopher G. McAnany
Grand Junction, Colorado
Attorneys for Respondent: Hoskin Farina & Kampf, P.C.
David M. Dodero
Nicholas H. Gower
Grand Junction, Colorado
No appearance by or on behalf of Liberty Mortgage Corporation, a Georgia corporation; or BB&T Corporation, a North Carolina corporation.
JUSTICE EID delivered the Opinion of the Court.
JUSTICE COATS joins with the majority and specially concurs.
JUSTICE HOOD concurs in part and dissents in part, and JUSTICE MÁRQUEZ joins
in the concurrence in part and dissent in part.
JUSTICE GABRIEL does not participate.

¶1      Petitioner Branch Banking and Trust Company asks us to decide whether a deed of trust securing a promissory note is a negotiable instrument under Article 3 of Colorado’s Uniform Commercial Code (“UCC”). The court of appeals held that deeds of trust are not negotiable instruments within the meaning of Article 3, and therefore the bank was not a holder in due course with respect to the deed at issue here. Fiscus v.  Liberty Mortg. Corp., 2014 COA 79, ¶¶ 47–49, __ P.3d __.
¶2      We affirm the judgment of the court of appeals, but on different grounds. In this case, the deed and other documents were forged. We hold that, even assuming a deed of trust qualifies as a negotiable instrument, holder-in-due-course status does not preclude a purported maker from asserting a forgery defense. Here, the purported maker possesses a valid forgery defense, his negligence did not contribute to the forgery, and he did not ratify the forged documents. As such, we need not and do not reach the issue of the negotiability of deeds of trust under Article 3.
I.
¶3      Respondent Ray Fiscus (“Husband”) married Vickie Casper-Fiscus (“Wife”) in 1985. In 1987, he purchased property in Grand Junction, Colorado, and titled it solely in his name. He financed the purchase with a mortgage loan, and the couple used the property as their marital home. Throughout their marriage, Wife managed their finances, which included the payment of household bills as well as mortgage and credit card debts. Husband neither confirmed these payments nor reviewed the couple’s bank statements or tax returns, and so he had little knowledge of their precise finances.
¶4      In June 2008, without his knowledge or authorization, Wife signed Husband’s name on a General Power of Attorney, a Limited Power of Attorney, and a Power of Attorney (Real Estate) (collectively, the “forged POAs”), which together purported to appoint her as Husband’s lawful attorney. Her daughter from a previous marriage notarized the documents. Using the forged POAs, Wife closed on a promissory note for approximately $220,000 with Liberty Mortgage Corporation and secured it with a deed of trust (the “2008 deed”) purporting to encumber the property. She signed the 2008 deed as “Raymond Fiscus by Vickie L. Casper-Fiscus as Attorney in Fact.” The couple’s 2008 tax return, signed by both spouses, included a mortgage interest deduction in the amount of $1,722. This was consistent with the amount Husband would have expected to have paid on the original 1987 mortgage loan. At no time in 2008 did Husband become aware of the note Wife executed.
¶5      In early 2009, Wife began making inquiries about refinancing the 2008 note. While doing so, she sent an email to a mortgage broker informing him that Husband “is out of town a lot so I have power of attorney” and asking if proceeding with the refinancing by power of attorney would be a problem. In February and March, she signed Husband’s name to several loan application documents, and, on March 30, she executed another note in the amount of $220,000 with Liberty Mortgage, once again using the forged POAs, securing the note with a deed of trust purporting to encumber the property (the “2009 deed”), and signing both documents as “Raymond Fiscus by Vickie L. Casper-Fiscus as Attorney in Fact.” Husband never authorized her to execute the 2009 note or deed in his name and had no knowledge of them at the time. Wife paid off the 2008 note with the proceeds from the 2009 note, and the 2008 note was released. Liberty Mortgage subsequently assigned the 2009 note and deed to BB&T Corporation, which, in turn, assigned them to petitioner Branch Banking and Trust.
¶6      The mortgage interest deduction on the couple’s 2009 tax return was $12,323, an amount much higher than Husband would have expected to claim on the original mortgage loan from 1987. Wife signed his name on the tax return without his knowledge, and, when he asked about it, she told him he did not need to sign it because he had authorized electronic filing. Husband never saw the tax return.
¶7      Wife hid all the documents evidencing the 2008 and 2009 transactions in the crawl space of their home. Husband did not learn of the transactions until 2011 when his broker contacted him to authorize an attempted withdrawal from his IRA account in the amount of $5,000. During that conversation, Husband learned that Wife had made an unauthorized withdrawal from his account earlier for $10,000 with the help of her son-in-law, who had impersonated Husband on the phone. Husband then performed a credit check and discovered the 2009 note. After discovering the note, he checked the county property records and uncovered the 2008 and 2009 deeds as well as the forged POAs. He filed an identity theft report with the sheriff’s office and an identity theft statement with Branch Banking and Trust. He also sued Liberty Mortgage, BB&T, and Branch Banking and Trust under the spurious lien statute, §§ 38-35-201 to -204, C.R.S. (2015), seeking to have the 2009 deed invalidated.
¶8      The district court held a show cause hearing in August 2012 at which Husband, Wife, Wife’s daughter, and a BB&T representative, among others, testified. In a detailed order, the district court held that the 2009 deed was spurious because it was not created, suffered, assumed, or agreed to by Husband, the property’s sole owner, and contained a material misstatement, that is, Husband’s signature.
¶9      The court also rejected Branch Banking and Trust’s defenses. As relevant here, the bank argued that, under Article 3 of the UCC, it qualified as a holder in due course and took the 2009 deed free from any forgery defense. In the alternative, it contended that Husband’s negligence contributed to the making of the forged deed and that he ratified the deed. The trial court, however, held that the 2009 deed was not a “negotiable instrument” but a “security instrument,” and therefore the bank could not assert a holder-in-due-course or negligent-contribution defense under Article 3. It also rejected Branch Banking and Trust’s ratification argument, concluding instead that Husband lacked knowledge of the facts relating to the documents’ creation until December 2011 and took no action at that time to approve them. Consequently, the court invalidated the 2009 deed and ordered its release.
¶10       The court of appeals affirmed. Fiscus, ¶ 1. It agreed with the trial court that a deed of trust is a security instrument, not a negotiable instrument, and therefore held that the Article 3 defenses did not apply. Id. at ¶ 47. It further concluded that there was record support for the trial court’s finding that Husband lacked knowledge of the material facts relating to the 2009 deed until December 2011.Id. at ¶ 41. Correspondingly, it affirmed the lower court’s holding that Husband did not ratify the note. Id. at ¶¶ 41, 43.
¶11      Branch Banking and Trust petitioned this court to review the court of appeals’ holding, and we granted certiorari to determine whether a lender in possession of a promissory note secured by a deed of trust on real property may assert a holder-in-due-course defense under section 4-3-305, C.R.S. (2015), to a claim that the deed of trust was forged. We conclude, however, that Husband has a valid forgery defense, not barred by negligence or ratification, and thus decline to address this issue. We therefore affirm the judgment of the court of appeals, but on other grounds.
II.
¶12       Branch Banking and Trust argues that the 2009 deed is a negotiable instrument under Article 3 because it secures the promise to pay contained in the 2009 note, which plainly qualifies as a negotiable instrument. But even assuming (without deciding) that Branch Banking and Trust is correct, we conclude that, on these facts, Husband has a valid forgery defense to any claim the bank might assert as a holder in due course, and that this defense is not precluded by any negligence or ratification on Husband’s part. As such, we need not and do not address the negotiability of a deed of trust under Article 3.
¶13       Article 3 of the UCC governs the issuance, transfer, enforcement, and discharge of negotiable instruments. Under Article 3, a holder in due course of a negotiable instrument takes it free of most defenses. § 4-3-305(b) (enumerating the defenses that do and do not apply to holders in due course); see also 2A Cathy Stricklin Krendl et al., Colorado Methods of Practice § 83:11 (6th ed. 2012) (“A holder in due course takes the instrument free from all claims of any party and of all defenses of any party with whom he has not dealt except for ‘real’ defenses. . . . A person who is not a holder in due course (including both a transferee and a holder) has much more limited rights.” (footnotes omitted)). Nevertheless, some defenses, such as infancy, duress, lack of legal capacity, and “fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,” still apply to holders in due course. § 4-3-305(a)(1), (b). On the other hand, other defenses enumerated in Article 3 and those provided by contract law may not be used to challenge the enforcement of an instrument. § 4-3-305(a)(2), (b).
¶14       Branch Banking and Trust asserts that, under section 4-3-305(b), holders in due course are only subject to the defenses outlined in subsection (a)(1). Because subsection (a)(1) does not include forgery, the bank argues that it is a contract defense to which holders in due course are not subject under subsection (a)(2). We disagree.
¶15      By its plain terms, the statute only identifies the defenses that apply to “[t]he right of a holder in due course to enforce the obligation of a party to pay the instrument.” § 4-3-305(b) (emphasis added); see also § 4-3-305(a) (listing the defenses to which “the right to enforce the obligation of a party to pay an instrument is subject”) (emphasis added). This language presupposes that an obligation exists and that the holder in due course has a right to enforce it.
¶16       When a purported maker raises a forgery defense, however, he is challenging the very existence of the obligation itself, not its enforcement. For an instrument to bind a person under Article 3, that person must either personally sign the instrument or be represented by an agent who signs it on his behalf. § 4-3-401, C.R.S. (2015); see also § 4-3-401 cmt. 1 (“Obligation on an instrument depends on a signature that is binding on the obligor. The signature may be made by the obligor personally or by an agent authorized to act for the obligor.”). This requirement is plainly not satisfied where his name is signed without authorization. Indeed, section 4-3-403(a), C.R.S. (2015), specifically provides that an “unauthorized signature” does not bind the person whose name is signed absent ratification, and section 4-1-201(b)(41), C.R.S. (2015), specifies that the term “unauthorized signature” includes a forgery.
¶17       The omission of forgery from section 4-3-305(a)(1) thus makes sense because it is not a defense to enforcement and therefore falls outside the scope of subsections (a) and (b). See § 4-3-302 cmt. 2, C.R.S. (2015) (“Notice of forgery or alteration is stated separately [in section 4-3-302(a)(1)] because forgery and alteration are not technically defenses under subsection (a) of Section 3-305.”). It follows that, despite this omission, a party may still assert forgery against a holder in due course. See Real Defense, Black’s Law Dictionary (10th ed. 2014) (listing “forgery of a necessary signature” as a “defense that is good against any possible claimant, so that the maker or drawer of a negotiable instrument can raise it even against a holder in due course”).
¶18       Article 3’s requirements for proving the validity of signatures on a negotiable instrument bolster this conclusion. In general, when a party files suit to enforce an instrument, the court presumes that signatures are valid unless specifically contested by the purported maker. § 4-3-308(a), C.R.S. (2015). Holder-in-due-course status becomes relevant only after the validity of the signatures has been established. § 4-3-308(b); see also § 4-3-308 cmt. 2 (“Once signatures are proved or admitted a holder, by mere production of the instrument, proves ‘entitlement to enforce the instrument’ . . . . Until proof of a defense or claim in recoupment is made, the issue as to whether the plaintiff has rights of a holder in due course does not arise.”). In this way, Article 3 provides for the assertion of a forgery defense even against holders in due course.
¶19       Therefore, consistent with other jurisdictions interpreting their versions of Article 3, we hold that a purported maker may raise forgery as a defense to an obligation on an instrument held by a party claiming holder-in-due-course status. See, e.g., Ingersoll-Rand Fin. Corp. v. Anderson, 921 F.2d 497, 503 (3d Cir. 1990) (“[U]nder New Jersey law, when a negotiable instrument is claimed to be a forgery, until such time as its status as a genuine instrument is established, even a holder in due course takes subject to the forgery defense.”); Fed. Fin. Co. v. Chiaramonte, No. CV 950148828, 1998 WL 727768, at *2 n.2 (Conn. Oct. 5, 1998) (“[The defense of forgery] is available to the defendants whether the holder is a holder in due course or not, since an unauthorized signature is ineffective . . . .”); Southtrust Bank of Ga. v. Parker, 486 S.E.2d 402, 404–06 (Ga. Ct. App. 1997) (reversing grant of summary judgment where questions of material fact remained as to forgery, even though holder was holder in due course).
¶20       On the facts as found by the district court, Husband has a valid forgery defense. The district court found that he never appointed Wife as his attorney or authorized her to sign his name on the forged POAs, any of the notes or deeds, or the loan applications. She thus was not an “an agent or representative” of Husband within the meaning of section 4-3-401. Yet she fraudulently signed his name on all of these documents, had her daughter from a prior marriage notarize them, and represented herself as his attorney. Husband therefore has a valid forgery defense.
¶21       Furthermore, although Article 3 bars a person whose signature was forged from asserting forgery as a defense if his own negligence contributed to the forgery, § 4-3-406(a), C.R.S. (2015), the district court’s detailed factual findings preclude any finding of negligence on Husband’s part here. Given that the interest deduction on the 2008 tax return was in the amount he expected, the district court concluded that the earliest Husband could or should have discovered the 2009 deed by the exercise of reasonable diligence was in April 2010, when he could have reviewed the 2009 tax returns. But when he asked Wife about the returns, she deliberately misled him, telling him that he did not need to sign them. We decline to declare him negligent for trusting his wife. And the next time he detected suspicious activity—in December 2011—he exercised “ordinary care” under section 4-3-406 by performing a credit check and filing identity theft reports with the police and the bank.
¶22       This was not a case where a purported maker failed to exercise reasonable control over his checks or signing devices. See § 4-3-406 cmt. 3. Rather, it was an active effort on Wife’s part to encumber the property without Husband’s knowledge. She forged his signature on three powers of attorney by signing his name without his permission; had her daughter from a previous marriage fraudulently notarize them; encumbered the property without his consent using the forged POAs; falsely advised the mortgage broker that he was unavailable and that they therefore had to proceed using powers of attorney; hid the documents evidencing the transactions in the crawl space of their home; and lied when he asked her about the 2009 tax returns. In short, Wife went to great lengths to defraud Husband, and he was not negligent for falling victim to her elaborate scheme.
¶23       We also agree with the court of appeals that the record supported the district court’s finding on ratification. While a purported holder may ratify an unauthorized signature, and thus make it binding on him, § 4-3-403(a), “ratification can never exist unless it is clearly shown that the party charged with ratification has full knowledge of all material facts, and thereafter knowingly accepts and approves the contract,” Colo.  Mgmt. Corp. v. Am. Founders Life Ins. Co. of Denver, 359 P.2d 665, 669 (Colo. 1961). The party alleging ratification—here, Branch Banking and Trust—carries the burden of proof. Film Enters., Inc. v. Selected Pictures, Inc., 335 P.2d 260, 265 (Colo. 1959). Husband testified, however, that he never knew of the 2008 or 2009 loan transactions or their resulting deeds of trust, and the district court credited that testimony. The record therefore supports the district court’s conclusion that he lacked “full knowledge of all material facts” about the transactions required for ratification, Colo. Mgmt. Corp., 359 P.2d at 669, and we affirm the court of appeals’ holding on this point, see C.R.C.P. 52 (“Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.”); Amos v. Aspen Alps 123, LLC, 2012 CO 46, ¶ 25, 280 P.3d 1256, 1262 (“In an appeal of a judgment entered after a trial to the court, we defer to the trial court’s credibility determinations and will disturb its findings of fact only if they are clearly erroneous and are not supported by the record.”).
¶24       Overall, then, the facts as found by the district court indicate that Husband has a valid forgery defense, did not negligently contribute to the forgery, and never ratified the notes or the deeds of trust securing them. On these facts, even assuming without deciding that Article 3 applies to the 2009 deed of trust, Husband prevails.
¶25       Because Husband has a valid forgery defense, not precluded by any negligence or ratification on his part, we need not and do not reach the question of whether a deed of trust is a negotiable instrument under Article 3. Correspondingly, we hold that it was unnecessary for the court of appeals to address this issue, and affirm its judgment on other grounds.
III.
¶26       We affirm the judgment of the court of appeals on other grounds.
JUSTICE COATS joins with the majority and specially concurs.
JUSTICE HOOD concurs in part and dissents in part, and JUSTICE MÁRQUEZ joins in the concurrence in part and dissent in part.

JUSTICE COATS, specially concurring.
¶27       While I concur in the majority opinion and fully agree that we need not reach the issue of the negotiability of deeds of trust under Article 3 or Colorado’s Uniform Commercial Code, in light of Justice Hood’s alternate opinion urging the treatment of the deed of trust in this case as a negotiable instrument, I write separately to explain my own understanding of the controlling statutes.
¶28      I emphasize “controlling statutes” because I think it clear that the question whether a deed of trust referenced by, and securing a promise to pay contained in, a negotiable instrument is therefore to be treated as inseparable from that negotiable instrument itself, is first and foremost a matter of statutory interpretation. By contrast, Justice Hood would resolve the question on the basis of ancient interpretations of the common law and principles of equity, and the decisions of two intermediate appellate courts still relying on pre-Uniform Commercial Code precedent in their respective states. See Carnegie Bank v. Shalleck, 606 A.2d 389, 400 (N.J. Super. Ct. App. Div. 1992) (citing Magie v. Reynolds, 26 A. 150 (N.J. Ch. Div. 1893)); Pitman Place Dev., LLC v.  Howard Invs., LLC, 330 S.W.3d 519, 536 (Mo. Ct. App. 2010) (citing Bellistri v. Ocwen Loan Serv., LLC, 284 S.W.3d 619, 623 (Mo. Ct. App. 2009) (relying in turn on George v.  Surkamp, 76 S.W.2d 368, 371 (Mo. 1934))). Justice Hood relies primarily on the authority of an 1882 decision of the United States Supreme Court, sitting as an appellate court for one of its territories―the Territory of Colorado―rather than as the highest constitutional court in our federal system of government, and interpreting then-controlling principles of law and equity. See Carpenter v. Longan, 83 U.S. (16 Wall.) 271 (1872). While the view expressed in Carpenter had become accepted by a majority of the jurisdictions of this country by some point in the first half of the twentieth century, prior to the widespread adoption of the Uniform Commercial Code, a substantial minority of states offered compelling objections and remained unwilling to adopt it. See W. W. Allen, Annotation, Right of Holder of Negotiable Paper Secured by Mortgage or of Trustee in Mortgage to Protection as Regards Defenses Against Mortgage, 127 A.L.R. 190 (1940). Since the widespread adoption of the Commercial Code, the two examples cited by the majority appear to be isolated examples of states unselfconsciously continuing to rely on their pre-Code precedents.
¶29       Although we have previously made clear that our adoption of the Uniform Commercial Code allows for the continued vitality of preexisting principles of law and equity only to the extent that they have not been displaced by the Code, and that “displacement,” as that term appears in the Code, contemplates the abrogation of common law rules without requiring unequivocal, explicit reference to the doctrine in question, see Clancy Sys. Int’l, Inc. v. Salazar, 177 P.3d 1235, 1237 (Colo. 2008), Justice Hood offers no explanation why the rule of Carpenter, even if we were to find it useful as a matter of policy, has not been displaced by the statutory scheme of the Code. And although the Code treats the age-old problem of the bona fide purchaser in its own way, through its own scheme of tightly interlocking concepts like the “negotiable instrument” and the “holder in due course,” Justice Hood offers no explanation how the Code can be interpreted to allow for the treatment of a security document as a negotiable instrument, or how the legislature’s distinctly separate treatment of real property interests, including mortgages and deeds of trust, can be reconciled with their conversion into commercial paper.
¶30       In perhaps the only case decided by this court concerning the effect of referencing a deed of trust in a promissory note, we addressed the converse question: whether the note lost its character as a negotiable instrument by being collateralized by the mortgage. In Haberl v. Bigelow, 855 P.2d 1368 (Colo. 1993), we answered that question with a resounding “no.” Although, as the court of appeals noted below, we did not directly answer the question whether a deed of trust can, nevertheless, become a negotiable instrument by partaking in the character of the promissory note, our reasoning in Haberl could hardly be considered favorable. In fact, our rationale in Haberl necessarily implied that it cannot. For the very reason that a deed of trust, by definition, includes undertakings other than simply an unconditional promise or order to pay a fixed amount of money on demand or at a definite time, it cannot, in and of itself, be a negotiable instrument, a proposition with which Justice Hood clearly agrees. If the deed of trust were treated as an integral part of, or inseparable from, a promissory note for which it provided security, as Justice Hood would have it, the effect would necessarily be to strip the note of its character as a negotiable instrument rather than to turn the deed into a negotiable instrument. In combination with the deed of trust, the note would necessarily state additional undertakings or instructions, and for that reason, if no other, fail to meet the statutory definition of a “negotiable instrument.”
¶31       Apart from the fact that the Code’s definition of “negotiable instrument” therefore necessarily displaces the “equitable” solution carved out in Carpenter, the legislature’s choice to separately define “spurious liens,” without including the defenses applicable to negotiable instruments, and to provide a specific, expedited process for having such liens declared invalid and removed further demonstrate its intent to draw a clear demarcation between negotiable instruments and liens. Part 2 of title 38, article 35 of the revised statutes, entitled “Spurious Liens and Documents,” defines, in pertinent part, a “[s]purious lien” to mean “a purported lien or claim of lien that . . . [i]s not created, suffered, assumed, or agreed to by the owner of the property it purports to encumber.” § 38-35-201(4), (4)(c), C.R.S. (2015). The legislature similarly provides for an expedited procedure by which any person whose property is affected by a recorded lien he believes to be spurious may petition the district court for an order to show cause why the lien should not be declared invalid and ordered released. § 38-35-204, C.R.S. (2015). Although easily lost sight of in Justice Hood’s discussion of negotiable instruments and holders in due course under the Commercial Code, the action at issue here is one brought by Fiscus pursuant to this Part 2.
¶32       A lien is an encumbrance on property. For the foregoing reasons, the Uniform Commercial Code simply cannot be construed to include a lien within the definition of a negotiable instrument or intend that one can be a holder in due course of a lien. In light of the legislature’s express provision for the removal of any lien that is “spurious,” however, even if a deed of trust collateralizing a promissory note could be considered a combination lien and negotiable instrument, the lien would nevertheless be subject to removal, as long as it was “not created, suffered, assumed, or agreed to by the owner of the property it purports to encumber.” The trier of fact in this spurious lien action expressly found from the evidence that Fiscus did not create, suffer, assume, or agree to Liberty’s lien on his property.
¶33       Justice Hood’s contention that the reasoning of cases pre-dating our adoption of the commercial code remains valid today seems to me best explained as an attempt to substitute a court-devised solution to the dilemma of the bona fide purchaser for the one chosen by the legislature. With regard to the class of which this case stands as a good example, it is a mystery to me how one could find greater equities to lie with a trader in commercial paper than with a homeowner who has been victimized by forgery.
¶34       Notwithstanding my doubts about the position taken by Justice Hood’s alternate opinion, I concur in the majority opinion and fully concur with its determination that we need not reach the negotiability of deeds of trust in this case.

JUSTICE HOOD, concurring in part and dissenting in part.
¶35       I agree with the majority that the purported maker of a negotiable instrument may raise forgery as a defense to an obligation held by a party claiming holder-in-due-course status. As the majority correctly notes, when a purported maker raises a forgery defense, he challenges the existence of the obligation, not its enforcement. Maj. op. ¶ 16. On the facts found by the trial court, I likewise agree that Husband has a valid forgery defense not barred by ratification.
¶36       I respectfully part company with the majority regarding whether remanding on negligence would amount to idle ceremony. Section 4-3-406, C.R.S. (2015), precludes a person from asserting that his signature was forged on a negotiable instrument if his own negligence contributed to the alleged forgery. Because the trial court concluded that the 2009 deed was not a negotiable instrument, it rejected Branch Banking and Trust’s section 4-3-406 negligence argument on its face. The majority deems further consideration of Husband’s alleged negligence unnecessary due to Wife’s highly deceptive conduct and his understandable faith in his spouse. Maj. op. ¶ 21 (“We decline to declare him negligent for trusting his wife.”). But Wife’s undeniably egregious behavior and the trust implicit in most marital relationships do not allow us to resolve a fact-intensive defense that the factfinder has yet to address.
¶37       Of course, if the deed of trust is not a negotiable instrument, then asking the trial court to examine Husband’s alleged negligence truly would be inviting idle ceremony. After all, any defenses under the UCC would then be unavailable. Therefore, I first address the threshold legal matter on which we granted certiorari: “Whether a lender in possession of a promissory note secured by a deed of trust on real property may assert a holder-in-due-course defense under section 4-3-305, C.R.S. (2014), to a claim that the deed of trust was forged.”
¶38       UCC Article 3 governs the issuance, transfer, enforcement, and discharge of negotiable instruments. A promissory note, such as the one Wife executed in this case, is a negotiable instrument governed by Article 3. A deed of trust is a “security instrument containing a grant to a public trustee together with a power of sale,” § 38-38-100.3(7), C.R.S. (2015), and is generally governed by real property law.
¶39       Jurisdictions are split on whether a deed of trust securing a promissory note is, like the note itself, a negotiable instrument subject to the UCC’s provisions and protections. Compare Hogan v. Wash. Mut. Bank, N.A., 277 P.3d 781, 783 (Ariz. 2012) (concluding trustee seeking to commence non-judicial foreclosure on deed of trust was not required to comply with UCC provisions, though compliance would have been required to collect on the accompanying note), and You v. JP Morgan Chase Bank, N.A., 743 S.E.2d 428, 433 (Ga. 2013) (stating that a security deed is not a negotiable instrument and is not governed by UCC Article 3), with Pitman Place Dev., LLC v. Howard Invs., LLC, 330 S.W.3d 519, 536 (Mo. Ct. App. 2010) (holding that a deed of trust shares the negotiable characteristics of the note it secures), and Carnegie Bank v. Shalleck, 606 A.2d 389, 400 (N.J. Super. Ct. App. Div. 1992) (explaining that upon assignment of negotiable instrument and accompanying mortgage to holder in due course, assignee may enforce both mortgage and note free of personal defenses mortgagor may have had against assignor).
¶40       On the one hand, because a deed of trust provides a security interest in real property, guaranteeing a remedy in the event of a default on a promise to pay, it may be considered to exist separately from the promise to pay itself; accordingly, it would not be subject to negotiable-instrument law. But on the other hand, the promissory note and accompanying deed of trust are functionally interdependent: a default on the note triggers rights under the deed of trust. Consequently, one could argue, the deed shares the note’s negotiability, and both must be governed by the UCC.
¶41       This latter notion that a deed of trust shares a promissory note’s negotiability dates back to the United States Supreme Court’s opinion in Carpenter v. Longan, 83 U.S. (16 Wall.) 271 (1872), an appeal from the Supreme Court of Colorado Territory. In Carpenter, the Court held that the assignee of a mortgage and negotiable note takes the mortgage as he takes the note, “free from the objections to which it was liable in the hands of the mortgagee.” Id. at 273. The Court explained the inseparability of the mortgage and the note: the note, as debt, is the principal thing, and the mortgage is an accessory that is carried with an assignment of the note. Id. at 274–75. It considered this dependence necessary to honor the bargain made between the parties that formed the mortgage, as well as the parties that agreed to its assignment. See id. at 273.
¶42       Early Colorado cases in the years following Carpenter emphasized the close relationship between a note and the mortgage securing it. E.g., Coler v. Barth, 48 P. 656, 659 (Colo. 1897) (“It is stated as a general rule, and it is unquestionably correct, that the note secured by a mortgage, or a deed of trust in the nature of a mortgage, is the principal thing, and the security but an incident . . . .”); Fassett v. Mulock, 5 Colo. 466, 469 (1880) (“It is a familiar principle that a mortgage is but an incident of the debt it secures, and an assignment of the debt carries the mortgage with it.”); accord McGovney v. Gwillim, 65 P. 346, 347 (Colo. App. 1901) (holding that where action upon note was barred by statute of limitations, action to foreclose on deed of trust securing note was also barred).
¶43       Though these cases pre-date the adoption of the UCC, I believe their reasoning remains valid today. Indeed, decades after Colorado’s 1965 codification of the UCC, this court observed the synergetic relationship between a promissory note and a deed of trust. See Columbus Invs. v. Lewis, 48 P.3d 1222, 1226 & n.4 (Colo. 2002) (“The transfer or assignment of a negotiable promissory note carries with it, as an incident, the deed of trust or mortgage upon real estate or chattels that secure[s] its payment.”). Given this court’s steadfast acknowledgement that a deed of trust is incidental to the note it secures, I would join those jurisdictions that have held that a deed of trust securing a promissory note takes on the note’s negotiable character.
¶44       In the briefing, Husband relies on Upson v. Goodland State Bank & Trust Co., 823 P.2d 704 (Colo. 1992), for a contrary result. That reliance is misplaced. In Upson, we held that when the release of a deed is obtained through fraud, that release is invalid. Id. at 706. We reached this result in part by analogizing to cases from other jurisdictions stating that a forged deed cannot pass title. Id. at 705–06. We also concluded that without a valid release, even a subsequent bona fide purchaser for value is not protected against a claim by the original beneficiary of the deed of trust. Id. at 706. Husband argues that, following Upson, the 2009 deed of trust executed using the forged POAs is void, and thus unenforceable by Branch Banking and Trust. But Upson held only that the release of a deed based on a forged request has no legal effect. Id.  Although we indicated that a forged deed is void, we did not consider whether the UCC applies to a deed of trust securing a promissory note, which is the question we face here. Furthermore, the UCC displaces conflicting common law provisions. Clancy Sys. Int’l, Inc. v. Salazar, 177 P.3d 1235, 1237 (Colo. 2008); see also § 4-1-103(b), C.R.S. (2015). Consequently, Upson must yield to the UCC and its holder-in-due-course provisions to the extent that the two might conflict. Thus, Upson is distinguishable and not controlling.
¶45       Similarly, Haberl v. Bigelow, 855 P.2d 1368 (Colo. 1993), which the court of appeals used to reject Branch Banking and Trust’s argument that a deed of trust is a negotiable instrument, is of limited relevance. In Haberl, this court considered whether the silence of a holder of a deed of trust securing a promissory note was sufficient to establish his consent to subordinate the instrument to another deed of trust. See id. at 1372. As a preliminary matter, we stated that the note secured was a negotiable instrument governed by UCC Article 3, and we supported that statement with a string of citations from other jurisdictions establishing that a promissory note is a negotiable instrument even when secured by a deed of trust. Id. at 1372–73. But while we acknowledged this general principle, it was not a focal point of our analysis. Moreover, we did not address the issue before the court today. Haberl therefore has minimal significance here.
¶46 Additionally, holding a deed of trust to be a negotiable instrument would further a fundamental policy of the UCC’s holder-in-due-course doctrine by encouraging the use of commercial paper to facilitate the flow of capital. See Georg v. Metro Fixtures Contractors, Inc., 178 P.3d 1209, 1212 (Colo. 2008). Such a result would ensure that Branch Banking and Trust is able to enforce the deed of trust that was “conditioned to secure the fulfilment of [the promissory note],” Carpenter, 83 U.S. (16 Wall.) at 273, to the same extent as it is able to enforce the note itself, protecting Branch Banking and Trust and other similarly situated parties’ bargained-for expectations and promoting commercial transactions.
¶47       Accordingly, I would hold that because a deed of trust is fundamentally interdependent with the note it secures, the deed takes on the note’s negotiable character and is governed by Article 3. And because the trial court initially held to the contrary and rejected Branch Banking and Trust’s section 4-3-406 negligence defense on the grounds that Article 3 did not apply, I would remand to the trial court for a full consideration of that defense.1
¶48       For these reasons, I concur with the majority’s conclusions regarding forgery and ratification, but I respectfully dissent from its holding that Husband was not negligent and Branch Banking and Trust may not raise section 4-3-406 as a defense to Husband’s forgery claim.

I am authorized to state that JUSTICE MÁRQUEZ joins in the concurrence in part and dissent in part.

[1] I also respectfully disagree with the majority’s implication that the negligence defense should be confined to “checks or signing devices.” Maj. op. ¶ 22. The comments to section 4-3-406 explain that the current version of that section was expanded from its former iteration “to apply not only to drafts but to all instruments.” § 4-3-406 cmt. 1.